**W. G. McCARLEY et al., Plaintiffs,**

v.

**Roy W. SANDERS, as Comptroller of the State of Alabama, et al., Defendants.**

**Civ. A. No. 2926.**

United States District Court,
M. D. Alabama, N. D.
Jan. 27, 1970.

Morris S. Dees, Jr., Montgomery, Ala., R. Clifford Fulford and Max Pope, Levine, Fulford & Pope, Birmingham, Ala., Joseph J. Levin, Jr., Montgomery, Ala., Douglas J. Kramer, New York City (of The James Madison Constitutional Law Institute), Norman Dorsen, New York City, for plaintiffs.

MacDonald Gallion, Atty. Gen., State of Alabama, Gordon Madison and Leslie Hall, Asst. Attys. Gen., State of Alabama, for State officials and Senators Adams, Albea, Branyon, Carr, Clark, Cooper, Engel, Folsom, Giles, Givhan, Goodwyn, Harris, Jackson, Leonard, Lindsey, Lolley, McDermott, Nabors, O'Bannon, Oden, Pelham, Pierce, Radney, Skidmore, Stone and Turner.

Robert S. Vance (of Jenkins, Cole, Callaway & Vance), Birmingham, Ala., for Senators Bailes, Childs, Dominick, Gilmore, Hawkins, Morrow and Vacca.

C. C. Torbert, Jr., pro se.

Before RIVES, Circuit Judge, and JOHNSON and PITTMAN, District Judges.

RIVES, Circuit Judge:

■ W. G. McCarley, a State Senator, was expelled from the Senate of Alabama on August 20, 1969. This action is brought by McCarley and by certain citizens and voters of his senatorial district on behalf of all such citizens and voters [1] seeking to have McCarley's expulsion from the State Senate declared invalid and for relief consequent upon such declaration. Governor Brewer has been dismissed as a party defendant. We have denied the motion of the members [2] of the State Senate made parties defendant. The other defendants are Roy W. Sanders, State Comptroller, and McDowell Lee, Secretary of the State Senate. The issues to be decided are simply whether the Fourteenth Amendment was applicable to require that the expulsion proceedings accord with procedural due process, and if so, whether McCarley has been afforded procedural due process.[3]

On August 12, 1969, a newspaper in the State Capitol, The Montgomery Advertiser, published a front page story headlined, "McCarley Asks Cash for Bill," which charged McCarley with serious misconduct in the performance of his duties as a State Senator and inferred that other unnamed Senators might be implicated.[4] On the same day, the Alabama Senate passed a resolution resolving:

"1. That request is hereby made that the Grand Jury of Montgomery County proceed immediately to inquire into the allegations against a member or members of this body appearing in a news article of the August 12, 1969, issue of The Montgomery Advertiser.

"2. That the President of the Senate appoint and impanel a committee from the membership of this body and that such committee be charged to inquire into the allegations of such news

1. We think these parties have sufficient standing to sue, and that on this point the case is distinguishable from Bond v. Floyd, N.D.Ga.1966, 251 F.Supp. 333, 338, and from Barry v. United States, ex rel. Cunningham, 1929, 279 U.S. 597, 616, 49 S.Ct. 452, 73 L.Ed. 867 on which Bond relied, because the lack of representation by the Senator of their choice may not be temporary; particularly so in view of the provision of Section 54 of the Constitution of Alabama that, "A member of the legislature, expelled for corruption, shall not thereafter be eligible to either house." In any event no harm can result from the presence of these parties plaintiff.

2. The effect of the Speech or Debate Clause in Section 56 of the Alabama Constitution is different from that of the Speech or Debate Clause in the Constitution of the United States, Art. 1, § 6, because the State Senators are charged as agents of the State with having denied McCarley procedural due process in violation of the Fourteenth Amendment.

The case is therefore distinguishable on this point from Powell v. McCormack, 1969, 395 U.S. 486, 501–506, 89 S.Ct. 1944, 23 L.Ed.2d 491. The relief sought in this case is purely preventative or remedial and does not involve damages, punishment, or other personal liability.

3. The plaintiffs ask also that we declare unconstitutional Section 53 of the State Constitution, which provides for the power to expel a member of either house of the State Legislature, but we do not find it necessary to reach that issue.

4. The first two paragraphs of the newspaper article read:
"Sen. W. G. McCarley of Autauga County offered the Fraternal Order of Police (FOP) a legislative package deal that would cost the organization at least $3,500 to get a statewide police pension bill out of a Senate committee, The Advertiser has learned.
"But, McCarley first told a policeman and another legislator that he was acting only as a messenger. The money, he said, would be for two other senators."

article and promptly report its findings to the Senate." [5]

The President of the Senate immediately appointed an investigating committee as provided by that resolution, consisting of seven Senators. A separate resolution also adopted on the same day gave this "Select Committee" power "to subpoena witnesses, to take testimony under oath, and compel the production of documents or writings by subpoena."

The next day, August 13, the Committee began hearings which were closed to the public. McCarley was invited by the Committee to testify. McCarley and his attorney were told by the chairman of the Committee that the Committee had been charged to investigate the matters contained in the newspaper article and that McCarley was not then being charged or accused of any wrongdoing, that the Committee would observe certain ground rules as to witnesses appearing before it, viz.: that the hearing would be closed to the public; that neither McCarley nor his attorney could be present when other witnesses testified; and that neither of them would be permitted to cross-examine any witness appearing before the Committee. The purpose of the Committee hearing was simply to investigate the charges made in the newspaper article.

Based on what he had read in the newspaper, McCarley testified to his version of what had occurred and answered questions from members of the Committee. Eighteen other witnesses testified before the Committee, but neither McCarley nor his attorney were permitted to be present.

At 12:30 A.M. on August 20, 1969, shortly after midnight, the Committee made its report detailing in five typed pages its findings as to Senator Mc-Carley and concluding as follows:

"As respects Senator McCarley the finding is inescapable that his conduct is incompatible with and contrary to his clear duty as a member of the Senate of Alabama. Viewed in the light most favorable to him and discounting in their entirety certain inconsistencies in his own testimony, Senator McCarley, by his own acknowledgement, was a knowing participant in a program of whatever origin which had as its purpose and goal the extraction of money from a citizen as a pre-condition to the orderly and proper exercise of the legislative process. He was, in short, by his own admission, a knowing accomplice. Conceding that he did not expect direct financial reward does nothing to void this finding."

After receiving the report the Senate recessed to come back later in the day. About 5:00 P.M., McCarley read a prepared statement to the Senate. A meeting of the Senate Rules Committee was called, and the presiding officer of the Senate announced that the Rules Committee would have an important report about 9:00 P.M., and urged every member of the Senate to be present. About 9:30 P.M. the Rules Committee made its report, containing four resolutions. The first three were passed within ten minutes. The fourth and presently pertinent resolution reads as follows:

"S.R. 97—WHEREAS, pursuant to S. R. 80, a copy of which is attached hereto, the President of the Senate did appoint and impanel a Committee charged to inquire and promptly report its findings to the Senate relating to a news article appearing in the Montgomery Advertiser in its issue of August 12, 1969, which article charged serious misconduct by a member or members of this Senate in the performance of official duties; and

WHEREAS, said Committee did on August 20, 1969, make and submit a written report to the Senate, a copy of which is attached hereto; and

WHEREAS, after having considered said report and particularly the find-

---

5. Complying with the request, the Grand Jury returned an indictment charging McCarley with bribery. Upon his trial, the petit jury found him not guilty.

ings as such relate to Senator W. G. McCarley:

NOW, THEREFORE, BE IT RESOLVED BY THE SENATE OF ALABAMA That pursuant to the authority contained in Section 53 of the Constitution of Alabama of 1901, Senator W. G. McCarley be and he is hereby expelled as a member of the Senate of Alabama."

There was some discussion. Senators Bailes, Clark and McCarley made brief speeches. McCarley "pleaded with the Senate to accept his statement that he had done nothing wrong and asked them not to expel him." [6]

Approximately twenty minutes after the introduction of the resolution it was passed by a vote of 32 in favor of expulsion and one against.

The defendants insist that the due process clause is not applicable to this case, quoting in support of that insistence the following from Snowden v. Hughes, 1944, 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497:

"More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause. Taylor & Marshall v. Beckham, 178 U.S. 548, 20 S.Ct. 1009, 44 L.Ed. 1187. Only once since has this Court had occasion to consider the question and it then reaffirmed that conclusion, Cave v. Newell, 246 U.S. 650, 38 S.Ct. 334, 62 L.Ed. 921, as we reaffirm it now."

■ However, it is now well established that the State's interest must be balanced with the interests of the individual, and that a person may not be discharged or expelled from a state public office upon a ground involving criminal guilt, infamy, disgrace, or other grave injury to the individual until after such notice and hearing as is requisite to due process of law. Wieman v. Updegraff, 1952, 344 U.S. 183, 191, 192, 73

S.Ct. 215, 97 L.Ed. 216; Slochower v. Board of Higher Education, etc., 1956, 350 U.S. 551, 555, 556, 76 S.Ct. 637, 100 L.Ed. 692; Cafeteria and Restaurant Workers, etc. v. McElroy, 1961, 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230. In Dixon v. Alabama State Board of Education, 5th Cir. 1961, 294 F.2d 150, 155, the principle was stated thus: "Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law."

This fundamental principle, essential to any fair and just system of laws, was recognized by the Senate of Alabama previously when a Senator was expelled for bribery, Journal of the Alabama Senate, 1932, pp. 1250–1254, 1273–1275, and by the House of Representatives of Alabama when a member of the House was acquitted of a charge of bribery, Journal of House, 1939, pp. 560, 561, 563–565, 594, 595, 597, 598, 634, 635, 636, 637.

■ There can, of course, be no serious argument that McCarley has been accorded even the barest rudiments of due process. He received no adequate notice. No formal charge against him was made before the Senate. The only procedure approaching a hearing accorded McCarley was before an investigating committee when he and his attorney were permitted to be present while McCarley made his statement and answered the Committee's questions but were excluded from hearing the testimony of the other witnesses and were denied the right to cross-examine those witnesses. The transcript of testimony before the investigating committee had not been transcribed and was not available to the Senate before a vote was taken on the expulsion resolution. No evidence was taken before the Senate. In brief, the Senators voted to expel McCarley for corruption (though not clearly or adequately charged), and rendered him thereafter ineligible to either house (Section 54 of the Alabama Constitu-

---

6. Witness Rex Thomas of the Associated Press.

tion) without according him an opportunity to defend himself and without themselves hearing any evidence. We must and do vacate McCarley's expulsion from the Senate of Alabama.

### JUDGMENT

It is therefore ordered and adjudged by the Court that the expulsion of W. G. McCarley from the Senate of Alabama is vacated, and that the adoption by the Senate of Alabama of Senate Resolution 97 on August 20, 1969, is declared to be unconstitutional, null, void and of no effect. Senator McCarley is entitled to receive any compensation and perquisites of the office of State Senator to which he was elected. The Court retains jurisdiction to conduct any further proceedings and to enter any further orders or judgments which may be necessary or appropriate to carry this judgment into effect.