450 F.2d 562
 Alex GORDON, individually and as a County Commissioner of
Dade County, Florida, Plaintiff-Appellee,
v.
E. B. LEATHERMAN, as Clerk of the Circuit Court of the
Eleventh Judicial Circuit of Florida,
Defendant-Appellee, Clark Merrill,
Intervenor-Appellant.
 No. 71-1926.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 8, 1971.
Rehearing and Rehearing En Banc Denied Jan. 5, 1972.
 
 Joseph Z. Fleming, D. P. S. Paul, Paul & Thomson, Miami, Fla., for appellant.
 Tobias Simon, Miami, Fla., for appellee Alex Gordon.
 W. G. Ward, Ward, Ward, Straessley, Hiss & Heath, Miami, Fla., for appellee, E. B. Leatherman.
 Before RIVES, BELL and GODBOLD, Circuit Judges.
 RIVES, Circuit Judge:
 
 
 1
 The issue presented for review is whether the due process clause of the Fourteenth Amendment prevents a home rule charter of government from attaching to the office of an elected county commissioner a condition that, after one year in office and at a recall election requested in a petition signed by at least 10,000 voters, the commissioner is subject to recall without reason or cause being stated either in the petition or otherwise. We hold that the Fourteenth Amendment does not prevent the attachment of such a condition to an elective office.
 
 Posture of Case
 
 2
 Alex Gordon (Plaintiff-Appellee) and five of the other nine Commissioners of Dade County, Florida, were the object of a recall campaign conducted by Clark Merrill (Intervenor-Appellant). Gordon sought a declaratory judgment in federal district court that the Dade County Home Rule Charter provisions establishing the procedure in respect of recalling elected officials violates the Fourteenth Amendment to the United States Constitution. Specifically, Gordon argued that the recall procedure is invalid since it serves to deprive him of a valuable property right, namely his public office, without due process of law. Further, Gordon prayed for an injunction forbidding E. B. Leatherman (Defendant-Appellee), the official having technical authority for initiating a recall election, from certifying the recall petitions and from ordering a recall election thereon. The district court issued a memorandum opinion, 325 F.Supp. 494, declaring the provisions in question unconstitutional and granting the injunction sought. From that decision, Merrill alone has timely filed this appeal.
 
 Facts
 
 3
 There is no substantial disagreement as to the critical facts in this case.
 
 
 4
 Article VIII, section 11 of the Florida Constitution of 1885, F.S.A., as amended provides:
 
 
 5
 "(1) The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a home rule charter of government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:
 
 
 6
 ******
 
 
 7
 * * *
 
 
 8
 "(i) Shall provide a method for the recall of any commissioner and a method for initiative and referendum, including the initiation of and referendum on ordinances and the amendment or revision of the home rule charter * * *."
 
 
 9
 Pursuant to that authority, the electors of Dade County on May 21, 1957, adopted the Metropolitan Dade County Home Rule Charter. Section 7.02 of that Charter[1] provides, inter alia, that after one year in office "[a]ny member of the Board of Commissioners * * * may be removed from office by the electors of the county * * * by which he was chosen" upon the majority vote of the electors voting. Such recall elections shall be conducted only on the petition of 10 percent or at least 10,000, whichever is smaller, of the qualified voters in the county. There is no requirement that such recall petitions contain any allegation or statement as to the reasons for the recall sought. Finally, Article VIII, section 6(e) of the Florida Constitution of 1968 seeks to validate the procedure with the following language:
 
 
 10
 "All provisions of the Metropolitan Dade County Home Rule Charter, heretofore or hereafter adopted by the electors of Dade County pursuant to Article VIII, Section 11, of the Constitution of 1885, as amended, shall be valid * * *."
 
 
 11
 The current term of the Board of County Commissioners began in 1968 and extends into 1972. In late 1970, Clark Merrill, as chairman of a recall committee dissatisfied with the performance of six of the nine Dade County Commissioners, had petitions drafted seeking the requisite 10,000 signatures to warrant a recall election. In accordance with the recall procedures enumerated in section 7.02 of the Home Rule Charter, Merrill first had the petitions approved by the Clerk of the Circuit Court, E. B. Leatherman. Upon obtaining the signatures required, Merrill then resubmitted the petitions to Leatherman, charged by section 7.02 with responsibility for canvassing and certifying the petitions, after which a recall election must be held within 45 to 90 days. Before Leatherman could perform his duties, however, Alex Gordon, one of the six commissioners sought to be recalled, filed suit in federal district court seeking to enjoin Leatherman from proceeding further with his tasks and seeking also to have section 7.02 declared unconstitutional.
 
 
 12
 At the heart of Gordon's complaint is the notion that the recall procedure of Dade County subjects him to the loss of his office, a valuable property right, without due process of law. In short, Gordon complained of the absence from section 7.02 of any requirement that recall petitions contain a statement as to the reasons for which recall is sought. The lack of such notice of charges, said Gordon, violates due process of law.
 
 
 13
 Leatherman, the nominal defendant to Gordon's suit, answered that he was not able to determine the applicable Florida law, that he had no adversary position to assert, and that he would abide by the district court's decision. Merrill then moved that he be allowed to intervene in order to oppose Gordon's complaint, which motion was granted. On March 23, 1971, the district court filed its memorandum opinion in which section 7.02 was declared unconstitutional "to the limited extent that it fails to require some form of notice of the reasons for recall," and in which E. B. Leatherman was "permanently enjoined from proceeding with the canvassing and certification of the recall petition." 325 F.Supp. at 500.
 
 Discussion
 
 14
 The district court in granting declaratory and injunctive relief first reasoned that plaintiff, as an elected official, "has a property right in his office which cannot be taken away except by due process of law." (App. 63) That statement is correct so far as it goes. But it is also true that an official takes his office subject to the conditions imposed by the terms and nature of the political system in which he operates. The question then becomes whether there is any constitutional infirmity in section 7.02 as comprising part of that system.
 
 
 15
 For primary authority, the district judge noted various Florida court decisions in which it was held
 
 
 16
 "that the recall procedure is available only if the charges presented in the petition relate to: (a) the official's conduct in office, and the ground of the action must be something stronger than a belief; (b) 'alleged ill-advised and possibly unlawful acts which the affiants * * * say resulted in a depreciation of the city treasury'; and (c) something other than dissatisfaction with the manner in which the official exercised his judgment on a matter before him."
 
 
 17
 325 F.Supp. at 497-98 (footnotes omitted. In our opinion, the district court has misread the cases cited as authority for the above proposition.[2]
 
 
 18
 As the district court remarked, this case is one of first impression. Correctly interpreted, the Florida cases to which the district court referred go no further than to require strict adherence to the various statutory and charter recall provisions. And where the recall procedure mandates a statement on the face of a petition as to the reasons for recall, the Florida courts were justified in interpreting such language as necessitating that the reasons proffered "have some real foundation or relation to the performance of the duties" of the officer. Collins v. City of Opa-Locka, Fla. App.1971, 251 So.2d 709. In essence, the courts were holding that a charter provision which requires an articulation of charges in a recall petition serves to establish a political system allowing an officer's removal only upon a showing of cause.
 
 As the district court below recognized:
 
 19
 "[E]ach time Florida Courts have considered due process and recall petitions they have done so in the context of determining whether the grounds stated in the petition * * * were adequate in meeting the requirements of the statute or charter which requires that grounds be stated."
 
 
 20
 325 F.Supp. at 497 (emphasis supplied). The Florida courts have never held that due process requires a notice of charges in a recall petition where there is no statutory or charter requirement to that effect. Rather, in Sproat v. Arnau, Fla. 1968, 213 So.2d 692, a recall provision was in question which, though it called for a statement of reasons in the petition, permitted the following notation:
 
 
 21
 "The statement of grounds for recall shall be sufficient in law if the grounds are merely that 'A majority of the electors of the City of Deerfield Beach have lost confidence in the Commissioner or Commissioners' sought to be recalled. * * *"
 
 
 22
 Id. at 692. The court sustained the provision although in result such notice as was required would be of little, if any, more value to the official whose recall was sought than no notice at all.
 
 
 23
 In effect, the Dade County, Florida, recall procedure is analogous to that at issue in Sproat. What is provided by the Dade County provisions is a political system in which commissioners are to serve at the will of the people. There is nothing inherently unconstitutional in such a system, and no court has held otherwise. To the contrary, the Sproat decision would seem to lend credence to that exact procedure. On the other hand, there is no infirmity in a political scheme in which officials can be removed only for cause. This type of system seems to be that prescribed in all the home rule charters held by the Florida courts to require a statement of reasons, in the words of the district court below, which must "border on, if not reach, a charge of misfeasance, malfeasance or nonfeasance in office." 325 F.Supp. at 498.
 
 
 24
 Where a home rule charter provision requires a statement of charges in a recall petition, such procedure is not necessitated by any notion of a due process command for notice, but is required by the very nature of a political system which permits removal only for cause. In Dade County, however, the charter provides a structure whereby commissioners serve at the will of the electorate, and as such, no statement need be made of reasons for recall.
 
 
 25
 In sum, the presence or absence of a requirement that reasons be stated on the face of a recall petition reflects the nature of the political system in operation. Such a statement has never been held to be a requisite of due process.
 
 
 26
 The district court also seeks to garner support for its view in federal cases "not involving recall procedures" in which the courts have held "that a public official cannot be removed or expelled from his office upon grounds involving criminal guilt or individual disgrace without notice and hearing." 325 F.Supp. at 498 (emphasis supplied). These cases are clearly distinguishable. For example, one such case is McCarley v. Sanders, M.D.Ala.1970, 309 F.Supp. 8, in which a three-judge district court overturned the Alabama Senate's expulsion of one of its members, on account of alleged corruption, where the expelled Senator was given no notice of the charges. In holding this procedure to be violative of due process, the court turned its decision on the similarity of the charges there at issue to those involved in criminal proceedings and in other infamous situations. Certainly, removal of a county commissioner by a majority of the voting electorate carries with it no such taint. The stigma involved is little more than that involved in the loss of any other election.
 
 
 27
 Furthermore, there is a fundamental difference between the expulsion or removal of a public official by the state and that same activity by the voters. The presence of governmental action in McCarley and the other cases cited in the district court opinion is alone sufficient to distinguish them from the present case. Any governmental body is required to act fairly,[3] but that is not true as to a voter. Insofar as the United States Constitution is concerned, an elector may vote for a good reason, a bad reason, or for no reason whatsoever. That principle applies to recall elections as it does to all other elections.
 
 Conclusion
 
 28
 Section 7.02 of the Dade County Home Rule Charter is, in our opinion, clearly valid. In a political system permitting recall at will, there is simply no requirement of due process that an elected official be given notice of the electorate's reasons for seeking his recall. It follows that the district court erred both in granting declaratory relief and in issuing an injunction against Leatherman. The judgment is reversed with directions to dismiss the complaint with prejudice.
 
 
 29
 Reversed with directions.
 
 
 30
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 PER CURIAM:
 
 31
 The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.
 
 
 
 [1]
 Section 7.02, Metropolitan Dade County Home Rule Charter, provides
 "Any member of the Board of County Commissioners or the Sheriff or any Constable may be removed from office by the electors of the county, district, or municipality by which he was chosen. The procedure on a recall petition shall be identical with that for an initiatory or referendary petition, except that:
 "1. The Clerk of the Circuit Court shall approve the form of the petition.
 "2. The person or persons circulating the petition must obtain signatures of electors of the county, district, or municipality concerned in numbers at least equal to ten percent or 10,000 whichever is smaller, of the qualified voters in the county, district, or municipality.
 "3. The signed petition shall be filed with and canvassed and certified by the Clerk of the Circuit Court.
 "4. The Board of County Commissioners must provide for a recall election not less than 45 nor more than 90 days after the certification of the petition.
 "5. The question of recall shall be placed on the ballot in a manner that will give the elector a clear choice for or against the recall. The result shall be determined by a majority vote of the electors voting on the question.
 "6. If the majority is against recall the officer shall continue in office under the terms of his previous election. If the majority is for recall he shall, regardless of any defect in the recall petition, be deemed removed from office immediately.
 "7. No recall petition against such an officer shall be certified within one year after he takes office nor within one year after a recall petition against him is defeated.
 "8. Any vacancy created by recall in the offices of Sheriff or Constables shall be filled for the remaining term by appointment by the Board of County Commissioners or the Board may require the office to be filled at the next regular election or at a special election called for that purpose."
 
 
 [2]
 Joyner v. Shuman, Fla.App.1959, 116 So.2d 472; Hines v. Dozer, Fla.App.1961, 134 So.2d 548; Tolar v. Johns, Fla.App.1962, 147 So.2d 196; Piver v. Stallman, Fla.App.1967, 198 So.2d 859, cert. den. without opinion, 201 So.2d 897 (Fla.1967)
 
 
 [3]
 "In Dixon v. Alabama State Board of Education, 5th Cir. 1961, 294 F.2d 150, 155, the principle was stated thus: 'Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law."'
 McCarley, supra at 11.