**Milburn J. CROWE, Plaintiff-Appellant,**

v.

**Earl S. LUCAS et al.,
Defendants-Appellees.**

**No. 76–4232.**

United States Court of Appeals,
Fifth Circuit.

May 22, 1979.

As Amended on Denial of Rehearing
July 27, 1979.

Robert Lawson Holladay, P. J. Townsend, Jr., Drew, Miss., for plaintiff-appellant.

Robert G. Johnston, Cleveland, Miss., Johnnie Earl Walls, Jr., Greenville, Miss., for defendants-appellees.

Before THORNBERRY, CLARK and RONEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

In June of 1973, Milburn J. Crowe was defeated in his bid for reelection to the Board of Aldermen of the City of Mound Bayou, Mississippi. Accepting Crowe's assertions of election fraud, the Circuit Court of Bolivar County, Mississippi, subsequently declared the election null and void. Contending that the effect of the Circuit Court order was to reinstate him as an alderman for lack of a duly elected successor, Crowe attended the Mound Bayou Aldermen's meetings of November 6, 1973, December 4, 1973, and August 6, 1974, and attempted to vote and take part in the debate. At each of those meetings, the Mayor and the other members of the Board ordered Crowe's arrest on a charge of disturbing the peace. On December 21, 1974, at 2:00 a. m., the assistant police chief of Mound Bayou, Oliver Knox Anderson, arrested Crowe for violating a city ordinance that required persons operating public facilities to use water provided by the City. The arrest was made under a warrant issued by Harold Ward, who had defeated Crowe in the aldermanic election which was declared void and who was acting in the capacity of Municipal Judge. The record here shows that Crowe's water service had been terminated because of his failure to pay his water bills and that, on the day of his arrest, he had been pumping water to his restaurant from a nearby well. Although he was taken to the Mound Bayou jail and required to post a bond at the time the arrests were made, Crowe was never brought to trial on any of the charges. Crowe filed a suit in federal district court alleging that various city officials had conspired to deprive him of his civil rights. The jury rendered a verdict against defendants Earl S. Lucas, the Mayor of Mound Bayou; Harold Ward, the alderman who also served as a Municipal Judge; Alfred Thompson, the Chief of Police; and the Assistant Chief of Police Anderson, awarding $5,000 in compensatory damages and $5,000 in punitive damages.

The district judge granted defendants' motion for judgment notwithstanding the verdict, finding that the defendants could not be held liable under the civil rights statutes since the actions Crowe complained of were committed in good faith and in reliance on advice of counsel. Crowe urges that the judgment n. o. v. should be reversed because the district court misapprehended the scope of the good faith defense. Defendants take the contrary position and also assert that, even if the district court erred in finding good faith, the judgment n. o. v. should be affirmed since Crowe did not show that a conspiracy existed or that he had been deprived of any right secured by the Constitution or laws of the United States. We reverse the district court's disposition on the motion for judgment n. o. v. and reinstate the jury verdict.

In *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc), we established the standard governing judgments n. o. v.:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences

point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

Thus in reviewing a judgment notwithstanding the verdict, a court's task is not to re-evaluate the evidence to form its own conclusions regarding the correctness of the jury verdict. Rather, *Boeing* requires us to determine whether reasonable men could, on any theory submitted to the jury, have resolved the dispute as the jury did. We now turn to an examination of the evidence presented in this case in light of the proper legal principles applied under the *Boeing* standard.

## I. Official Immunity

Defendants assert that a cloak of official immunity protects them from liability for the acts of which Crowe complains. The Supreme Court has recently held that a judge cannot be held liable under the civil rights statutes for his judicial acts unless those acts are committed in the "clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331, 339 (1978); *see Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Thus, if any of the acts of Municipal Judge Harold Ward at issue here can properly be characterized as judicial acts, and if those acts were not committed in the "clear absence of all jurisdiction," then the acts cannot be the basis of a § 1983 suit. The immunity of the police officers in this case is likewise clearly established; they are entitled to a "qualified" or limited degree of immunity under the standards established in *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed. 288 (1967), and *Bogard v. Cook,* 586 F.2d 399 (5th Cir. 1978).

The Supreme Court has never decided whether the immunity accorded to persons in the position of Mayor and Alderman here is an absolute immunity or a "qualified" immunity. Defendants urge that we should rule in favor of absolute immunity, citing *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), which accorded absolute immunity to state legislators. We reject this argument. In *Monell v. Department of Social Service of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality is a suable entity under 42 U.S.C. § 1983. In the course of that opinion the Court stated:

> Since the question whether local government bodies should be afforded some form of official immunity was not presented as a question to be decided on this petition and was not briefed by the parties nor addressed by the Courts below, we express no views on the scope of any municipal immunity beyond holding that municipal bodies sued under § 1983 cannot be entitled to an absolute immunity, lest our decision that such bodies are subject to suit under § 1983 "be drained of meaning." *Scheuer v. Rhodes,* 416 U.S. 232, 248, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

It would be anomalous to establish a greater degree of immunity for municipal officials than is given to the city itself. Moreover, in *Scheuer v. Rhodes, supra,* 416 U.S. at 248, 94 S.Ct. at 1692, 40 L.Ed.2d at 103, the Court rejected the notion that the governor of a state was entitled to absolute immunity:

> Under the criteria developed by precedents of this Court, § 1983 would be drained of meaning were we to hold that the acts of a governor or other high executive officer have "the quality of a supreme and unchangeable edict, overriding all conflicting rights of property and unreviewable through the judicial power of the federal government."

We conclude that the Mayor and Aldermen of Mound Bayou are entitled to the same qualified or limited immunity accorded to other state executive officials. *See Jones v.*

*Diamond,* 519 F.2d 1090, 1100–01 (5th Cir. 1975); *Curry v. Gillette,* 461 F.2d 1003 (6th Cir. 1972), *cert. denied,* 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Nelson v. Knox,* 256 F.2d 312 (6th Cir. 1958).

Having established the degree of immunity accorded to defendants here, we must next determine whether sufficient evidence existed for the jury to find that defendants' shield of immunity was pierced. As we noted above, Municipal Judge Harold Ward is absolutely immune from liability under the civil rights acts for his conduct unless the jury could have found that certain of his acts were not judicial acts or were committed in the clear absence of all jurisdiction. Crowe's complaint against Ward is based on Ward's participation in the conspiracy to deprive Crowe of his civil rights, on Ward's act in ordering his arrest at the Aldermen's meeting, and on Ward's signing the warrant for Crowe's arrest for violating the water pump ordinance. Of these acts, the jury could properly have found that the first and second were not judicial acts.

Whether an act can be characterized as a judicial act depends upon "the nature of the act itself, *i. e.,* whether it is a function normally performed by a judge, and . . . the expectations of the parties, *i. e.,* whether they dealt with the judge in his judicial capacity." *Sparkman, supra,* 435 U.S. at 362, 98 S.Ct. at 1107, 55 L.Ed.2d at 342. Harold Ward wore two hats, he was both Municipal Judge and Alderman. The jury could reasonably have concluded that Ward's actions in conspiring against Crowe and in ordering his arrest at the Board meetings were taken as an Alderman rather than as a Judge. Maintaining order at a Board of Aldermen's meeting is normally a function performed by an Alderman rather than a Municipal Judge. Moreover, it is not contended that the parties here believed that Ward was acting as Municipal Judge at those meetings, nor were the asserted conspiratorial acts related in any way to Ward's judicial duties. Thus, for purposes of testing the judgment n. o. v., the conduct of all defendants here is to be measured against the standards of the qualified immunity defense.

A state officer entitled to qualified immunity can be held accountable for his official actions only if it is shown that he " 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights' of the person affected" or that he acted with "subjective intent was to harm the plaintiff." *Bogard v. Cook,* 586 F.2d 399, 411 (5th Cir. 1978). Thus, if a state defendant's actions were committed in "good faith"—without malice or without knowledge that a constitutional violation would result—qualified immunity protects him from liability under the civil rights statutes.

Apparently this case was submitted to the jury on Crowe's conspiracy claims under both 42 U.S.C. §§ 1983 and 1985. Before a defendant can be held liable under § 1985, it must be shown that the plaintiff was a victim of class-based discrimination. *McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919, 928–29 (5th Cir. 1977). Since no class-based discrimination was alleged here, Crowe could not have recovered under § 1985. Conspiracies to deprive a person of his constitutional rights are, however, also cognizable under § 1983, *Mizell v. North Broward Hospital District,* 427 F.2d 468, 472–473 (5th Cir. 1970), which does not require a showing of class-based discrimination as a prerequisite to liability.

The judge gave the following instructions to the jury on the conspiracy issue:

The Federal statutes forbid any person willfully to conspire with any other person to deprive a person of any right, privilege, or immunity secured or protected by the Constitution or laws of the United States.

Before there can be a violation of this Federal statute, the evidence in the case must establish that the defendants did conspire to do harm to plaintiff.

An act is done "willfully" if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.

If the jury should find that the defendants knowingly formed a conspiracy to

deprive plaintiff of his constitutional rights and in furtherance of that conspiracy did knowingly unlawfully arrest plaintiff with specific intent to do something the law forbids, or with bad purpose either to disobey or to disregard the law; then the jury may find for the plaintiff under such circumstances.

1. If the jury should find from a preponderance of the evidence in the case that the plaintiff is entitled to a verdict for actual or compensatory damages, that is, if you have found in answer to the interrogatories which precede this, that the plaintiff was damaged and was entitled to compensatory damages, that is, damages to compensate him for his injuries and loss, and you should further find that the act or omission of the defendant, which proximately caused actual injury or damage to the plaintiff, was maliciously, or wantonly, or oppressively done; then the jury may, if in the exercise of discretion they unanimously choose so to do, add to the amount of actual damages such amount as the jury shall unanimously agree to be proper, as punitive and exemplary damages.

An act or a failure to act is "maliciously" done, if prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member.

An act or a failure to act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person.

An act or a failure to act is "oppressively" done, if done in a way or manner which injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person.

Whether or not to make any award of punitive and exemplary damages, in addition to actual damages, is a matter exclusively within the province of the jury, if the jury should unanimously find, from a preponderance of the evidence in the case, that the defendant's act or omission, which proximately caused actual damage to the plaintiff, was maliciously or wantonly or oppressively done; but the jury should always bear in mind that such extraordinary damages may be allowed only if the jury should first unanimously award a plaintiff an award for actual or compensatory damages; and the jury should also bear in mind not only the conditions under which, and the purposes for which, the law permits an award of punitive and exemplary damages to be made, but also the requirement of the law that the amount of such extraordinary damages, when awarded,

On the other hand, if the jury believes the defendants acted in good faith and in the lawful exercise of their authority, then no conspiracy as recognized by law could have existed.

The judge also instructed the jury on when punitive damages could be awarded.[1] The jury, in response to interrogatories[2] found

must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party in the case.

2. The interrogatories and the jury's answers to them are printed below:

Interrogatory No. 1: Do you find from a preponderance of the evidence that a conspiracy was formed by two or more of the defendants to deprive plaintiff of any of his rights as such have been described in the court's instructions?

Answer: Yes.

If your answer to the foregoing interrogatory is in the affirmative, then answer Interrogatories 2, 3, 4 and 5, otherwise do not do so.

Interrogatory No. 2: Designate which of the defendants you find from a preponderance of the evidence participated in said conspiracy. Indicate your decision by entering "Yes" or "No" opposite each defendant's name as follows:

| | |
|---|---|
| Earl S. Lucas | Yes. |
| Harold Ward | Yes. |
| Alfred Thompson | Yes. |
| Herman Johnson | No. |
| Oliver Knox (Anderson) | Yes. |
| James Jones | No. |
| James Carmicle | No. |

Interrogatory No. 3: What amount of damages in dollars and cents do you find from a preponderance of the evidence that plaintiff suffered as a result of the deprivation of his rights by reason of the aforesaid conspiracy?

Answer: $5,000.00

Interrogatory No. 4: Do you find from a preponderance of the evidence that the plaintiff is entitled to recover punitive damages against the defendants who may have participated in the conspiracy?

Answer: Yes.

Interrogatory No. 5: If you have found from a preponderance of the evidence that plaintiff is entitled to recover punitive damages, in what amount, in your discretion, do you determine to be a reasonable award?

Answer: $5,000.00

If your answer to Interrogatory No. 1 has been in the negative, then answer the two following interrogatories, otherwise, do not do so.

that a conspiracy did exist and that Crowe was entitled to an award of punitive damages.

■ For the jury to have found that a conspiracy existed and to have awarded punitive damages, the jurors must necessarily have concluded that the defendants maliciously deprived Crowe of some constitutional right. Obviously if defendants acted maliciously, they could not have acted in good faith. In light of the evidence presented at the trial, the jury's conclusion that malice was the motivation for the defendants' actions was reasonable. Crowe and his witnesses testified that his activities as Alderman had caused resentment in the governing body of Mound Bayou. These witnesses also stated that Crowe's behavior at the meetings after his "successor's" election had been voided did not justify the conduct of Mayor Lucas, Alderman Ward, and Police Chief Thompson in ordering his arrest for disturbing the peace. The record also contains evidence showing that these same defendants participated in private meetings at which Crowe was the topic of discussion. In addition, defendant Oliver Knox Anderson arrested Crowe at 2:00 a. m. one morning for violating the water pump ordinance, which admittedly contains no criminal sanctions. Crowe also testified that Anderson assaulted him without justification during the arrest. The witnesses for the defense disputed much of this evidence, but the jury could reasonably have chosen to credit Crowe's witnesses and to find malice in the defendants' actions.

■ Defendants argue that, despite the evidence supporting the jury's finding of malice, they are entitled to immunity since

they relied on advice of counsel in committing the acts of which Crowe complains. We reject their arguments. Reliance on advice of counsel does not serve as an absolute defense to a civil rights action. Rather, it is among the calculus of facts that a jury is to consider on the issue of good faith. *Dellums v. Powell,* 184 U.S.App.D.C. 275, 293, 566 F.2d 167, 185 (1976), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1977). As is the case with all other evidence submitted to it, a jury is entitled to evaluate the testimony about advice of counsel and to make a decision concerning its credibility. Defendants here presented extensive testimony in attempting to establish their reliance on the advice of counsel. In light of all the other evidence presented at the trial, the jury could reasonably have disbelieved this evidence and have concluded that any reliance defendants placed on advice of counsel did not remove the taint of malice coloring their acts toward Crowe.

## II. Constitutional Deprivation

■ Defendants assert that Crowe did not prove that he had been denied any right secured by the Constitution or laws of the United States in violation of § 1983. We disagree. Crowe alleged that several of his constitutional rights had been infringed, including his rights to freedom of speech and assembly, to petition the government and to due process of law. In order to overturn the jury verdict, defendants must show that the jury could not reasonably have founded that the defendants deprived Crowe of at least one of these rights.

Interrogatory No. 6: Do you find from a preponderance of the evidence that on the occasion of plaintiff's arrest on December 21, 1974, the arresting officers, Oliver Knox (Anderson), James Jones and James Carmicle, used force in making the arrest which was in excess of that which was reasonably necessary to effect the arrest and place the plaintiff in custody?
    Answer: _____
    If your answer to the foregoing interrogatory is in the affirmative, then answer the following interrogatory, otherwise do not do so.

Interrogatory No. 7: What amount in dollars and cents will fully compensate the plaintiff for injuries, if any, which he may have suffered as a result of the use of excessive force by the arresting officers:
    Answer: $_____
    The judge instructed the jury not to answer interrogatories six and seven in the event they answered interrogatory number one in the affirmative. The judge had told the jury to include any damages arising from excessive use of force in making the water pump arrest in the award of damages for the conspiracy.

6 Miss.Code Ann. § 21–15–1 provides:

> All officers elected at the general municipal election provided for in section 21–11–7, shall qualify and enter upon the discharge of their duties on the first Monday of July after such general election, and shall hold their offices for a term of four years and until their successors are duly elected and qualified.

Under this statute, Mound Bayou Aldermen are entitled to occupy their positions until their successors are duly elected. In this case, the Circuit Court of Bolivar County issued an order voiding the results of the election at which Crowe was defeated. This order was never stayed, even though the defendants in the suit did file an appeal to the Mississippi Supreme Court. Defendants argue that the person who defeated Crowe, Harold Ward, was entitled to retain his seat after the election results were voided since he had been issued a certificate of election. This argument is without merit. A certificate of election merely creates a presumption that the person named in it legally occupies the specified office. The presumption is rebuttable, however, and, in this case, Crowe presented sufficient evidence to the Circuit Court to overcome that presumption. *See Yates v. Summers,* 177 Miss. 252, 170 So. 877 (1936). Thus, under the Mississippi statute governing the election of city officials, Crowe was entitled to serve as an Alderman until another election could be held.

An elected city official who is entitled to hold an office under state law has a property interest in his office which can be taken from him only by procedures meeting the requirements of due process. *Gordon v. Leatherman,* 450 F.2d 562, 565 (5th Cir. 1971); *see Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976). The record here shows that the defendants acted wrongfully to deny Crowe his rights as an Alderman. The jury thus could reasonably have found that they deprived Crowe of due process of law in violation of the fourteenth amendment.

### III. Conspiracy

Defendants urge that Crowe failed to prove the existence of a conspiracy. We reject this argument. In order to establish a cause of action based on conspiracy, plaintiff must show that the defendants agreed to commit an illegal act. This requirement must often be met by circumstantial evidence; conspirators rarely formulate their plans in ways susceptible of proof by direct evidence. *Hoffman-LaRoche, Inc. v. Greenberg,* 447 F.2d 872, 875 (7th Cir. 1971); *Industrial Building Materials, Inc. v. Interchemical Corporation,* 437 F.2d 1336, 1343 (9th Cir. 1970). The evidence here showed that the defendants had participated in private meetings at which Crowe was discussed. From this evidence and the testimony regarding the defendants' course of conduct toward Crowe, the jury could reasonably have inferred that a conspiracy existed.

### IV. Attorneys' Fees

Crowe has requested that he be awarded attorneys' fees. 42 U.S.C. § 1988 provides, in part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Section 1988 is applicable to this case since the appeal was pending when the statute was passed. *Rainey v. Jackson State College,* 551 F.2d 672, 675–76 (5th Cir. 1977). In *Gore v. Turner,* 563 F.2d 159, 163 (5th Cir. 1977), we held that a successful civil rights plaintiff should ordinarily recover an attorney's fee under section 1988 unless special circumstances would render such an award unjust. We find that no special circumstances justifying a denial of attorneys' fees exist here. Indeed, the jury here awarded punitive damages to Crowe, finding that the defendants had acted with malice to deprive Crowe of his civil rights. To deny a plaintiff an attorney's fee when

malice has been found would contravene the purposes for which section 1988 was designed—to encourage plaintiffs deprived of constitutional rights to seek redress. *See Gore, supra,* 563 F.2d at 163–64. The case is remanded for the district court to award reasonable attorneys' fees to Crowe.

REVERSED and REMANDED.