990 So.2d 675 (2008)
STATE of Florida, Appellant,
v.
Erik Alan WEYANT, Appellee.
No. 2D07-3609.
District Court of Appeal of Florida, Second District.
September 19, 2008.
*676 Bill McCollum, Attorney General, Tallahassee, and Sara Macks, Assistant Attorney General, Tampa, for Appellant.
Erin M. Davies of Escobar, Ramirez & Associates, P.A., Tampa, for Appellee.
SILBERMAN, Judge.
The State appeals an order dismissing count I of an information charging Erik A. Weyant with carrying a concealed firearm (count I), possession of cannabis (count II), and reckless driving (count III). We affirm the trial court's dismissal of the concealed firearm charge.
Section 790.01(2), Florida Statutes (2006), provides that "[a] person who carries a concealed firearm on or about his or her person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."[1] Section 790.001(2) defines "concealed firearm" as a firearm "which is carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person." Section 790.25(5) addresses possession of a concealed firearm in a private conveyance, stating that
it is lawful and is not a violation of s. 790.01 for a person 18 years of age or older to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use. Nothing herein contained prohibits the carrying of a legal firearm other than a handgun anywhere in a private conveyance when such firearm is being carried for a lawful use. Nothing herein contained shall be construed to authorize the carrying of a concealed firearm or other weapon on the person. This subsection shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons, including lawful self-defense as provided in s. 776.012.

(Emphasis added.)
The phrase "readily accessible for immediate use" is defined in section 790.001(16), *677 which states that the phrase "means that a firearm or other weapon is carried on the person or within such close proximity and in such a manner that it can be retrieved and used as easily and quickly as if carried on the person." The term "securely encased" is defined in section 790.001(17), which states that the term "means in a glove compartment, whether or not locked; snapped in a holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access." (Emphasis added.)
The undisputed facts are that Weyant had an unloaded firearm in his vehicle wedged between the two front seats. He had a magazine for the firearm containing six live rounds in the closed center console. Weyant contended in his motion to dismiss that "because the firearm was unloaded and the ammunition was securely encased, [he] was not carrying the firearm in such a manner that it could have been retrieved and used as easily and quickly as if carried on his person." The State countered that "the proximity of the unloaded firearm and the ammunition made it readily accessible and easy to quickly obtain and place into the firearm" and that the firearm could be loaded and fired "pretty quickly" or "in a fairly quick manner." The trial court concluded as a matter of law, based on these facts and the liberal construction mandated in section 790.25(5), that the unloaded gun was not readily accessible for immediate use. We agree.
Several cases have applied section 790.25(5) to conclude that it is not a violation of section 790.01(2) for a person to have a firearm inside a vehicle's closed center console because the firearm is securely encased. See Bell v. State, 636 So.2d 80, 81 (Fla. 2d DCA 1994); City of Miami v. Swift, 481 So.2d 26, 27 (Fla. 3d DCA 1985); see also Gemmill v. State, 657 So.2d 900, 901-02 (Fla. 4th DCA 1995) (holding that a firearm found in a closed box wedged between the driver's seat and the passenger's seat was securely encased). Under these authorities, if Weyant's firearm had been loaded and kept in the closed console, or if it was unloaded but kept together with the ammunition in the closed console, he would not have been in violation of section 790.01(2). However, because the firearm was not in the closed console and thus was not securely encased, we must consider, as did the trial court, whether the firearm was readily accessible for immediate use.
When an unsecured firearm located inside a vehicle is not loaded, a court must consider the location and accessibility of both the firearm and the ammunition in determining whether the firearm is readily accessible. See Ridley v. State, 621 So.2d 409, 409 (Fla.1993) (holding that an unloaded firearm located under a driver's seat was readily accessible for immediate use because a fully loaded ammunition clip was located under the passenger's seat); Ashley v. State, 619 So.2d 294, 296 (Fla.1993) (holding that a firearm in the front passenger floorboard area was not readily accessible for immediate use when no ammunition was found in the vehicle but adding "that the issue of whether the presence of ammunition in a vehicle takes a firearm out of the exception in section 790.25(5) must be determined factually on a case-by-case basis"). In Ashley, the supreme court also disapproved the decision in Amaya v. State, 580 So.2d 885 (Fla. 2d DCA 1991), concluding "that an unloaded firearm located under the passenger's seat of a vehicle is readily accessible for immediate use when ammunition for that firearm is lying in open view on the passenger's seat." 619 So.2d at 295.
Here, the ammunition was not in open view on the passenger seat. Instead, the *678 ammunition was inside the closed center console of the vehicle while the unloaded firearm was wedged between the front seats. In order to use the firearm, Weyant would have had to pull it out, open the center console, retrieve the magazine, and load the firearm before using it. Under these circumstances, he would not have been able to retrieve and use the firearm as easily and quickly as if he carried it on his person. Thus, under the applicable law, including the liberal construction that must be applied pursuant to section 790.25(5), the trial court correctly determined that the firearm was not readily accessible for immediate use.[2]
Accordingly, we conclude that the trial court correctly dismissed the concealed firearm charge.[3]
Affirmed.
WALLACE, J., Concurs.
VILLANTI, J., Dissents with opinion.
VILLANTI, Judge, Dissenting.
I respectfully dissent. As the majority recognizes, section 790.25(5) does not directly address the situation in which an unloaded firearm is concealed but otherwise readily accessible in the passenger compartment of a vehicle and ammunition for that firearm is concealed within the closed center console of the vehicle. Further, there does not appear to be any case law addressing this exact factual scenario. Thus, we are asked in this case to apply existing law to a new set of facts.
The supreme court has clearly held that an unloaded firearm cannot be a "concealed weapon" when there is no ammunition in the vehicle. See Ashley v. State, 619 So.2d 294, 296 (Fla.1993). Conversely, however, an unloaded firearm may be a "concealed weapon" when ammunition is stored elsewhere in the vehicle. Id. In that situation, the question is whether the firearm and the ammunition are located in such a way that the firearm is "readily accessible for immediate use." Id. When the locations of the unloaded firearm and the separate ammunition are undisputed, the question of whether the firearm is readily accessible for immediate use is one of law. See Boswink v. State, 636 So.2d 584, 585 (Fla. 2d DCA 1994). Thus, we need not defer to the trial court's conclusion on the issue; instead, our standard of review is de novo.
While this case addresses a new factual scenario, I nevertheless believe that the majority's opinion runs contrary to supreme court precedent. In Ashley, the supreme court discussed the facts of the underlying case of Amaya v. State, 580 So.2d 885 (Fla. 2d DCA 1991). In Amaya, the defendant's unloaded firearm was concealed under the passenger seat of his vehicle. Id. at 886. The firearm's clips and bullets were lying separately on top of the passenger seat. Id. This court held that the firearm was not "readily available for immediate use" because its clip and bullets were separate from the firearm; therefore, the firearm could not be used immediately. Id. However, in Ashley, the supreme court quashed this court's decision *679 in Amaya and held that, under those facts, the "firearm was readily accessible for immediate use" because "[t]he location and accessibility of the firearm and ammunition placed the firearm `within such close proximity ... that it [could] be retrieved and used as easily and quickly as if carried on the person.'" Ashley, 619 So.2d at 296 (quoting § 790.25(5)).
Likewise, in Ridley v. State, 621 So.2d 409 (Fla.1993), the undisputed facts were that an unloaded firearm was concealed under the driver's seat of the vehicle and a fully loaded clip for that firearm was lying under the passenger's seat. The supreme court held that the locations of the firearm and the clip were such that the firearm was "readily accessible for immediate use." Id.
In my view, the facts in this case are more compelling than those discussed by the supreme court in both Ashley and Ridley. Here, the firearm was concealed between Weyant's seat and the center console of the vehicle. A fully loaded clip was inside the unlocked center console. Thus, unlike defendants Amaya and Ridley, who would have had to fumble under the seats of their vehicles to access their firearms, Weyant in this case had both the firearm and the loaded clip literally inches from his hands. Moreover, while defendant Amaya had to grab the firearm from under the seat, apparently load bullets into the clip, and then load the clip into the firearm, here Weyant needed only to load the already-loaded clip into the firearm.[4] Thus, in my view, the firearm in this case was more "readily accessible for immediate use" than those found "readily accessible for immediate use" by the supreme court in both Ashley and Ridley. While this court is required to liberally construe section 790.25(5) in favor of the lawful use, ownership, and possession of firearms, our discretion to do so is not unbridled, and we may not do so in contravention of supreme court precedent. Therefore, I would reverse the trial court's ruling and remand for further proceedings.
Finally, I am not blind to the incongruity that results from this stringent extrapolation from Ashley and Ridley. This application results in an unloaded firearm concealed in the passenger compartment of a vehicle with ammunition concealed in an unlocked center console being a "concealed weapon" while a fully loaded firearm concealed in that same unlocked center console is not. Section 790.25(5) specifically provides an exception for "securely encased" concealed firearms. It does not provide an exception for concealed firearms and securely encased concealed ammunition. I would hope that the legislature would take this opportunity to amend section 790.25(5) to address the issue of unloaded but concealed firearms rather than leaving this issue to the courts to decide on an ad hoc basis.
NOTES
[1] Section 790.01(3) states that section 790.01(2) does not apply to a person who is licensed to carry a concealed weapon or a concealed firearm pursuant to section 790.06. Weyant does not claim that he was so licensed.
[2] This conclusion also seems logical in light of the cases and statutes cited previously which reflect that a person would not be guilty of a violation of section 790.01(2) if the person kept a loaded firearm in a closed console or kept an unloaded firearm together with the ammunition in the closed console.
[3] We also agree with the trial court's conclusion that the issue presented was not a jury question. See Boswink v. State, 636 So.2d 584, 585 (Fla. 2d DCA 1994) ("Contrary to the trial court's view, the undisputed facts imposed upon it the task of deciding as a matter of law whether the guns were `readily accessible.'").
[4] I acknowledge that there is some ambiguity in the facts in the Amaya case as to whether the clip in that case was loaded. Both this court and the supreme court referred to the firearm's "clips and bullets" lying separately from the firearm in open view on the passenger's seat. Ashley, 619 So.2d at 296; Amaya, 580 So.2d at 886. Neither opinion referred to a loaded clip. However, this possible factual dispute does not change my position that the facts in this case are more compelling than those in Amaya, which was quashed by Ashley.