657 So.2d 900 (1995)
Gary GEMMILL, Appellant,
v.
STATE of Florida, Appellee.
No. 94-0775.
District Court of Appeal of Florida, Fourth District.
Opinion filed April 5, 1995.
Rehearing Denied August 15, 1995.
*901 Richard L. Jorandby, Public Defender, and Cherry Grant, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Carol Cobourn Asbury, Asst. Atty. Gen., West Palm Beach, for appellee.
GUNTHER, Judge.
Appellant, Gary Gemmill (Gemmill), appeals his conviction and sentence for one count of carrying a concealed firearm and one count of carrying a concealed weapon. We affirm Gemmill's conviction for carrying a concealed weapon but reverse his conviction for carrying a concealed firearm.
Gemmill was stopped at a red light when his van was rear-ended by a one ton truck carrying a front end loader. Police responded to the scene of the accident at which time Gemmill appeared incoherent, unable to answer questions and unstable despite the use of a cane. The police thought Gemmill was drunk and became suspicious when he would not let anyone near his van. As it turns out, Gemmill has multiple cognitive and speech problems as a result of a previous scaffolding accident. Eventually, Gemmill moved his van out of traffic, requested medical attention and was transported to the hospital by Emergency Medical Services for the alleged injuries sustained in the accident.
Based upon the officer's suspicions, a K-9 unit was called to sniff Gemmill's van for narcotics. The narcotics dog repeatedly responded to the left rear quarter panel of Gemmill's van. As a result, the police obtained a search warrant to search Gemmill's van for contraband.
Prior to serving the search warrant, Officer Nelson went to the hospital to question Gemmill about the automobile accident. Gemmill, upon observing Officer Nelson, became very agitated and pulled out a can of mace from his black waist pouch. After some argument with Officer Nelson, Gemmill finally placed the can of mace back in his waist pouch and pulled out a pearly white item. Gemmill depressed a button on the item and Officer Nelson immediately recognized the item as an electronical stun gun. Thereafter, Officer Nelson seized the waist pouch and the stun gun.
Later that same night, after Gemmill was released from the hospital and returned to his van, the police served the search warrant. Officer Hall, accompanied by a narcotics dog, was the first officer to search the van. Hall, walking up and down the interior of the van with the narcotics dog, described seeing a closed box. Thereafter, Hall looked "in" this box but only noticed a clutter of items. Although Officer Hall never testified to removing this box's lid, that conclusion must be reached because Officer Hall looked "in" the "closed" box. Subsequently, Officer Godder proceeded to search the van. When Godder entered the van, he observed a cardboard box, the same box observed by Hall, wedged between the driver and passenger seat. After a closer examination, Godder was able to see the butt of a small caliber pistol partially covered by a drug store bag in the box. Thereafter, Gemmill was charged and convicted of carrying a concealed firearm for the gun in the van and carrying a concealed weapon for the stun gun found in Gemmill's waist pouch while at the hospital.
*902 The issues raised by this appeal revolve around the legality of possessing and carrying weapons. Section 790.01(2), Florida Statutes (1993), makes it a crime to carry a concealed firearm on or about the person. However, section 790.25(5) provides an exception to section 790.01(2) and states, in pertinent part:
Notwithstanding subsection (2), it is lawful and is not a violation of s. 790.01 to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use.
"Securely encased" is defined as:
in a glove compartment, whether or not locked; snapped in a holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access.

§ 790.001(16), Fla. Stat. (1993) (emphasis added).
The issue on appeal as to the first count is whether the gun was concealed, i.e., whether the box was closed thus requiring a lid to be opened for access. Officer Hall was the first person to search Gemmill's van and the only witness to testify as to the closure of the box. On cross-examination, Hall admitted that the box in which the gun was later recovered was closed when he first observed it. Officer Godder searched and eventually found the instant gun but never testified as to whether the box contained a lid. Consequently, the only reasonable conclusion that can be drawn from the state's evidence is that Hall removed the box's lid when he looked in the closed box. Accordingly, based upon the state's own evidence, Gemmill's gun was securely encased as it was contained in a closed box which required a lid or cover to be opened for access. Instead of proving concealment of a firearm, the state proved that Gemmill's possession of the firearm was lawful. Thus, Gemmill was wrongfully convicted of a crime that never occurred.
As to count two, Gemmill argues that because the stun gun was in his leather waist pouch, the securely encased exception legalizes his possession of the stun gun at the hospital. However, section 790.25 specifically provides that the securely encased exception does not legalize the carrying of a concealed weapon on the person:
... it is lawful and not a violation of s. 790.01 to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased... Nothing herein contained shall be construed to authorize the carrying of a concealed firearm or other weapon on the person.

§ 790.25(5), Fla. Stat. (1993) (emphasis added). The plain meaning of the statute allows the carrying of a concealed firearm in a vehicle if it is securely encased but prohibits, notwithstanding the aforementioned, the carrying of a concealed weapon on the person. If Gemmill's carrying of the stun gun in his waist pouch were lawful conduct under the securely encased exception, the language prohibiting the carrying of a concealed weapon on the person would be completely negated. Such an interpretation would be illogical and render section 790.25(5) meaningless.
Moreover, in the instant case, there is no reason why Gemmill was compelled to carry the stun gun with him to the hospital in his waist pouch. Gemmill had the opportunity and the capability to leave either the stun gun or the entire waist pouch in his van when he moved the automobile after the accident but before being transported to the hospital. Accordingly, the securely encased exception does not apply to the facts of this case and cannot legalize Gemmill's carrying of the concealed stun gun on his person outside his automobile. Thus, Gemmill's conviction for carrying a concealed weapon is affirmed.
Accordingly, this case is affirmed in part, reversed and remanded in part with directions to the trial court to vacate Gemmill's conviction for carrying a concealed firearm.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
*903 PARIENTE, J., concurs.
STONE, J., dissents with opinion.
STONE, Judge, dissenting.
I would affirm as to all issues.
Taking the evidence most favorably to Appellee, Appellant had a loaded, concealed firearm within ready reach of the driver's seat. We should not assume on this record that the gun was securely encased.
On direct examination, Officer Hall, whose job was not to conduct the search but to control and watch the dogs, testified to seeing, and incidentally looking in, the box. He never indicated that he even touched the box. The only reference on the state's side that the box was "closed" occurred at one point on Hall's cross-examination when the record shows he was asked, "you noticed the box but I believe you said it was closed, is that correct?" The officer responded, "that's correct."
Although we have no choice but to take the printed record as we find it, there is a good chance that this is a court reporter's error and that the word used was "cluttered," not "closed," or that Officer Hall thought the reference was to "cluttered." Nothing else fits into the balance of the state's or the defense actions. I postulate this, as nowhere else do the officers, or counsel for either side, refer to a closed box, a secured box, or of Officer Hill touching the box in any manner. He only testified to having observed the box and its contents while conducting the "sniff" search with the dogs and that he did not observe a gun. This is consistent with the other testimony, and the state's theory of the case, that the gun was not readily observable until Officer Godder actually kneeled on the driver's seat and peered down into the box where he saw a part of the butt sticking out from under a bag in the cluttered box.
The defense theory at trial was not that the gun was securely encased in a box with a top on it. Rather, the issue presented was whether the officer could have observed the gun from outside the van. Even Defendant claims only that the box had two flaps on it, one on each of the long sides (with none on the short ends); he did not assert that it was securely closed.
It seems to me that this is not simply a case of fundamental error in which we permit an argument to be made on appeal not raised below. Rather, Appellant asks that we draw a conclusion that is essentially at odds with the record, except for one questionable response on cross-examination that is inconsistent with the balance of the questioning, testimony, and argument to the court and jury.