[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 10, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-15425

_____

D. C. Docket No. 07-01176-CV-T-23-TGW

JEFFREY L. POULAKIS,

Plaintiff-Appellant,

versus

MICHAEL ROGERS, individually
and as an officer with the North
Port, Florida, Police Department,
ERIC STENDER, individually and
as an officer with the North Port,
Florida, Police Department,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 10, 2009)

Before BLACK and MARCUS, Circuit Judges, and QUIST,* District Judge.

---

* Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

MARCUS, Circuit Judge:

In this civil rights case, Jeffrey Poulakis appeals from the district court's order granting final summary judgment to North Port, Florida police officers Michael Rogers and Eric Stender on the basis of qualified immunity. Officers Rogers and Stender arrested Poulakis for carrying an unlawfully concealed firearm, in violation of Fla. Stat. § 790.01(2), after Poulakis informed them during a traffic stop that he had stored a firearm in the closed center console of his automobile and after the officers consulted with and received approval for the arrest from the local Assistant State Attorney. Poulakis claims that the officers violated his Fourth Amendment rights, lacking even arguable probable cause to arrest him because his .357 magnum revolver was "securely encased" when it was placed in the center console, and thus lawfully carried under Fla. Stat. § 790.25(5).

After thorough review, we conclude that the officers had arguable probable cause to arrest Poulakis for a violation of Florida's concealed firearms statute, and, therefore, that they were entitled to qualified immunity. Accordingly, we affirm.

I.

In this case, the material facts and procedural history are undisputed. On the morning of November 21, 2006, Officer Rogers was on duty, driving a marked police car for the City of North Port, Florida Police Department. At approximately

2

9:40 a.m., Rogers observed the appellant, Poulakis, driving at approximately sixty-one miles per hour in a forty mile per hour zone in his 1990 black Jeep Wrangler within North Port. Rogers pulled Poulakis over for speeding. Officer Stender, Rogers' patrol sergeant and supervisor, then arrived on the scene as backup.

During the traffic stop, Rogers observed Poulakis leaning down and to the right several times. He asked Poulakis why he was making these movements, and Poulakis responded that he had placed a beer can under his seat. Rogers and Stender then removed Poulakis from his car and asked him whether he had anything else in the vehicle. Poulakis told the officers that he had a firearm in the center console. Rogers then searched the automobile and found a fully loaded .357 magnum concealed in the closed center console. Poulakis explained that he had a concealed weapon permit but that the permit had expired. Stender testified that he then contacted his supervisor, Lieutenant Kevin Sullivan, for his opinion as to whether they could arrest Poulakis for the unlawful possession of a concealed firearm. Sullivan said that he then called the on-duty Assistant State Attorney for the 12th Judicial Circuit in Sarasota to ask for his legal advice, and that the Assistant State Attorney, after hearing the facts, opined that the officers had probable cause to make this arrest.

Thereafter, Officers Rogers and Stender arrested Poulakis for carrying a

concealed firearm in violation of Florida Statute § 790.01(2).[1]  He was transported

to the Sarasota county jail, where he was booked.  The Office of the State Attorney

for the 12th Judicial Circuit, however, declined to prosecute the case.

On July 6, 2007, Poulakis brought this § 1983 civil rights complaint against

Officers Rogers and Stender in the United States District Court for the Middle

District of Florida.  The gravamen of the claim was that the officers, in their

individual capacities, arrested Poulakis without probable cause, and in violation of

the Fourth Amendment.

Soon thereafter, Rogers and Stender moved for summary judgment claiming

qualified immunity; Poulakis, in turn, cross-moved for summary judgment.  The

district court granted the officers' motion, concluding that, although Rogers and

Stender did not have arguable probable cause to arrest Poulakis for carrying an

unlawfully concealed weapon, their reliance on the advice of the Assistant State

Attorney was an "extraordinary circumstance" sufficient under the circumstances

of this case to allow a finding that they acted reasonably in arresting the defendant,

citing to <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982).

This timely appeal followed.

---

[1] The officers also issued Poulakis a citation for having an open container of alcohol in his vehicle and a citation for speeding.

4

II.

The only issue before us is whether the officers, in their individual capacities, are entitled to qualified immunity on the Fourth Amendment claim. We review de novo the district court's disposition of a summary judgment motion based on qualified immunity. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). Summary judgment is appropriate when "the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Comer v. City of Palm Bay, Fla., 265 F.3d 1186, 1192 (11th Cir. 2001) (internal citation and quotation marks omitted).

"As we have often observed, '[q]ualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009) (quoting Lee, 284 F.3d at 1193-94). The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, Anderson v. Creighton, 483 U.S. 635, 638-39 (1987), "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee, 284 F.3d at 1194 (internal citation and quotation marks omitted).

"[T]o receive qualified immunity, an official must first establish that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" McCullough, 559 F.3d at 1205 (quoting Lee, 284 F.3d at 1194). "If the official was acting within the scope of his discretionary authority" -- and it is undisputed that Officers Rogers and Stender were -- "the burden then shifts to the plaintiff to show that the grant of qualified immunity is inappropriate." Id.

In Pearson v. Callahan, 129 S. Ct. 808 (2009), the Supreme Court recently reaffirmed the basic qualified immunity standard. Under this standard, we must grant qualified immunity to a government official unless the plaintiff can show: first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the officer; and, second, that the unlawfulness of the defendant's actions was "clearly established" at the time of the incident. See id. at 815-16, 818. As we noted in Lee, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." 284 F.3d at 1194 (internal citation and quotation marks omitted).

Under Pearson, the federal courts are no longer obliged to conduct this qualified immunity analysis in the order articulated by Saucier v. Katz, 533 U.S. 194 (2001); rather, we are now "permitted to exercise [our] sound discretion" to decide which prong of this inquiry to address first. Pearson, 129 S. Ct. at 818.

6

On the facts of this case, we begin and end our analysis with the second question -- whether the unconstitutionality of the officers' actions was clearly established at the time of the incident. We hold that it was not.

Poulakis claims that Officers Rogers and Stender falsely arrested him for a violation of Fla. Stat. § 790.01(2) in violation of his Fourth Amendment rights. Under the Fourth Amendment, an individual has a right to be free from "unreasonable" searches and seizures, U.S. Const. amend. IV, and an arrest of a person constitutes a seizure of that person. Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007). Whether a seizure by an arrest was "reasonable" under the Constitution turns on a finding of probable cause, Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004), a determination made under the totality of the circumstances. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998). Probable cause to arrest for the commission of a crime may be found when the "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992). A warrantless arrest without probable cause violates the Constitution. Kingsland, 382 F.3d at 1226; Jones v. Cannon, 174 F.3d 1271, 1283 (11th Cir. 1999).

However, even if an officer arrests an individual without probable cause in violation of the Constitution, this does not automatically strip the officer of qualified immunity protection. "We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause." Skop, 485 F.3d at 1137; see also Anderson, 483 U.S. at 641 ("[I]t is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable."). Rather, we grant the officer qualified immunity unless the court determines that the right violated was "clearly established" at the time. Saucier, 533 U.S. at 201. The Supreme Court has declared that the test of "clearly established" law cannot apply at a high level of generality; instead, to deny qualified immunity, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." Anderson, 483 U.S. at 640. See also Saucier, 533 U.S. at 201 (stating that the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition"). The dispositive question is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

8

Saucier, 533 U.S. at 202.

In wrongful arrest cases, we have frequently framed the "clearly established" prong as an "arguable probable cause" inquiry. In other words, we have said that when an officer violates the Constitution because he lacked probable cause to make an arrest, the officer's conduct may still be insulated under the second prong of qualified immunity if he had "arguable probable cause" to make the arrest. See Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) ("If a constitutional violation occurred because the officer lacked probable cause, we next consider whether arguable probable cause existed. The officer may still be shielded from liability because his actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks omitted); see also Draper v. Reynolds, 369 F.3d 1270, 1276 n.7 (11th Cir. 2004) ("Given our conclusion that [defendant] had actual probable cause and no constitutional violation occurred, we need not discuss the arguable probable cause doctrine . . . for purposes of determining the second prong of the qualified immunity test."); Scarbrough v. Myles, 245 F.3d 1299, 1303 (11th Cir. 2001) ("Because [defendant] had arguable probable cause to arrest [plaintiff], he violated no clearly established law."); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) ("[Defendant] is entitled to qualified immunity because he had

9

arguable probable cause to arrest [plaintiff].  Put differently, [the plaintiff] has not

shown that the law . . . is so clearly established that no reasonable officer, faced

with the situation before [the defendant], could have believed that probable cause

to arrest existed.").  Arguable probable cause may be found where "reasonable

officers in the same circumstances and possessing  the same knowledge as the

Defendant[] could have believed that probable cause existed to arrest." Lee, 284

F.3d at 1195 (quoting Scarbrough, 245 F.3d at 1302).[2]

_____

[2] We are not persuaded by the dissent's suggestion, based on Skop v. City of Atlanta, 485 F.3d 1130 (11th Cir. 2007), and Davis v. Williams, 451 F.3d 759 (11th Cir. 2006), that we ought to consider arguable probable cause under the first prong rather than the second prong of the qualified immunity analysis. Several of our cases, including Post v. City of Fort Lauderdale, 7 F.3d 1552 (11th Cir. 1993), have addressed the concept of arguable probable cause under the clearly established, second prong of the qualified immunity analysis.  These cases are controlling. See  Davis v. Estelle, 529 F.2d 437, 441 (5th Cir. 1976) (stating that a panel has no power to "disregard the precedent set by a prior panel, even though it conceives error in the precedent"); see also United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993) ("each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.").

We add that consideration of arguable probable cause under the second prong is consistent with the essential focus on "clearly established law."  The first prong of the qualified immunity analysis asks only whether the facts, when viewed in the light most favorable to the plaintiff, establish a violation of the Constitution. See Saucier, 533 U.S. at 201. And, we have stated clearly that a warrantless arrest without probable cause violates the Constitution. See, e.g., Kingsland, 382 F.3d at 1226; Jones, 174 F.3d at 1283; see also Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.") (emphasis added)).

An examination of arguable probable cause makes sense under the second prong because the second prong does not ask whether the Constitution was violated.  Instead, it asks only whether a reasonable officer was given fair and suffcient notice that what he was doing was unlawful under the circumstances.  Simply put, the only question we ask under second prong is

10

In determining whether an officer lacked arguable probable cause to justify an arrest -- i.e., whether the right was clearly established at the time of the incident -- under controlling law we turn to the precedent of the United States Supreme Court, the precedent of this Court, and to the highest court of the relevant state in interpreting and applying the law in similar circumstances. This Court has said clearly, consistently, and on numerous occasions that we may only consider the precedent of these courts in determining whether the case law has "clearly established" a right for qualified immunity purposes. See, e.g., Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 827 n.4 (11th Cir. 1997) ("In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."); McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) ("We have held that decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state (here, the Supreme Court of Florida) can clearly establish the law."); Marsh v. Butler County, Ala., 268 F.3d 1014, 1033, n.10 (11th Cir. 2001) (en banc) ("When case law is needed to 'clearly establish' the

---

whether "[a] reasonable officer[] in the same circumstances and possessing the same knowledge as the Defendant[] could have believed that probable cause existed to arrest." Lee, 284 F.3d at 1195. Thus, we consider arguable probable cause under the second prong.

11

law applicable to the pertinent circumstances, we look to decisions of the U.S.

Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and

the highest court of the pertinent state."); see also Thomas ex rel. Thomas v.

Roberts, 323 F.3d 950, 953 (11th Cir. 2003) (same); Wilson v. Strong, 156 F.3d

1131, 1135 (11th Cir. 1998) (same); D'Aguanno v. Gallagher, 50 F.3d 877, 881 n.6

(11th Cir. 1995) (same); Courson v. McMillian, 939 F.2d 1479, 1497-98 & n.32

(11th Cir. 1991) (same).

The reason we have looked to the highest court of the pertinent state to

"clearly establish" the law is because decisional law drawn from intermediate state

courts is too unsettled and too readily subject to split authority to put an officer on

clear notice that his conduct would be unlawful.[3]  Again, there will be some cases

where law enforcement officials will reasonably, but mistakenly conclude that

probable cause is present, and, as the Supreme Court has instructed us, those

officials should not be held personally liable.  See Malley v. Briggs, 475 U.S. 335,

---

[3] This rule of law is different than the one we employ when our jurisdiction is grounded on diversity of citizenship. In Erie cases, we may look to the intermediate courts of a state where the highest court of the state  has not ruled because we are sitting just as a state court and merely looking for the best interpretation of  the substantive law of the state.  See, e.g., Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1309 (11th Cir. 2007); McMahan v. Toto, 311 F.3d 1077, 1080 (11th Cir. 2002).

344-45 (1986); see also Anderson, 483 U.S. at 641.

Moreover, "[w]e have said many times that 'if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000) (quoting Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997)). However, in the absence of clearly established case law, in some cases, we may still find that "the words of the pertinent federal statute or federal constitutional provision . . . [are] specific enough to establish clearly the law applicable to particular conduct and circumstances." Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002); see also Lassiter v. Alabama A&M Univ., 28 F.3d 1146, 1150 n.4 (11th Cir. 1994) (en banc) ("We leave open the possibility that occasionally the words of a federal statute or federal constitutional provision will be specific enough to establish the law applicable to particular circumstances clearly and to overcome qualified immunity even in the absence of case law."), abrogated on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 & n.9 (2002)).  "For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." Vinyard, 311 F.3d at 1350; Lee, 284 F.3d at 1199-1200 (finding that an officer violated a "clearly established" right, and denying qualified immunity in the

13

absence of case law, where the officer slammed plaintiff's head against the trunk of her car after plaintiff was "arrested, handcuffed, and completely secured").

In the instant case, no decision from the United States Supreme Court, this Court, or the Florida Supreme Court has clearly established that a firearm found in a center console of a vehicle is "securely encased" for the purposes of Florida's penal code, Fla. Stat. § 790.25(5).[4] The question then boils down to whether the statutory text itself is so clear and compelling in permitting Poulakis to maintain a concealed firearm in the closed center console of his automobile that no reasonable officer could have thought there was probable cause to effect an arrest under these circumstances.

Chapter 790 of the Florida Statutes contains the pertinent provisions concerning the possession and carrying of firearms. Section 790.0l(2) contains the general prohibition on carrying concealed firearms. It states that "[a] person who carries a concealed firearm on or about his or her person commits a felony of the

---

[4] Again, the decisions of the Florida intermediate appellate courts in Dixon v. State, 831 So. 2d 775 (Fla. 4th DCA 2002), and Bell v. State, 636 So. 2d 80 (Fla. 2d DCA 1994), finding that the defendant did not violate § 790.01 where the defendant had placed a weapon or firearm in a closed center console, cannot "clearly establish" the governing law. McClish, 483 F.3d at 1237; Marsh, 268 F.3d at 1033 n.10.

14

third degree. . . ." Fla. Stat. § 790.01(2).[5]  Section 790.25(5), however, provides

this limitation to the general prohibition:

> [I]t is lawful and is not a violation of s. 790.01 for a person 18 years of age or older to possess a concealed firearm or other weapon for self-defense or other lawful purpose within the interior of a private conveyance, without a license, if the firearm or other weapon is securely encased or is otherwise not readily accessible for immediate use.

Fla. Stat. § 790.25(5).[6]  And, Fla. Stat. § 790.001(17), in turn, defines what it

means for the possession of a concealed firearm to be permissible because it is

"securely encased."  Section 790.001(17) reads this way: "'[s]ecurely encased'

means in a glove compartment, whether or not locked; snapped in a holster; in a

gun case, whether or not locked; in a zippered gun case; or in a closed box or

---

[5] A concealed firearm is defined as "any firearm . . . which is carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person."  Fla. Stat. § 790.001(2).  The plaintiff does not challenge that his firearm was a "concealed firearm."

[6] The statute also says:

> Nothing herein contained prohibits the carrying of a legal firearm other than a handgun anywhere in a private conveyance when such a firearm is being carried for a lawful use. Nothing herein contained shall be construed to authorize the carrying of a concealed firearm or other weapon on the person. This subsection shall be liberally construed in favor of the lawful use, ownership, and possession of firearms and other weapons, including lawful self-defense as provided in s. 776.012.

Fla. Stat. § 790.25(5).

15

container which requires a lid or cover to be opened for access." Fla. Stat. § 790.001(17).

After thorough review, under the peculiar facts of this case, we conclude that Officers Rogers and Stender had <u>arguable probable cause</u> to arrest Poulakis. Four factors yield this conclusion: first, the "securely encased" firearm exception does not specifically include a center console among the list of locations, although it explicitly enumerates five other permissible locations; second, a center console is not self-evidently a "box or container which requires a lid or cover to be opened" as the Florida legislature has used the term; third, there has been substantial confusion in Florida for a long time about whether persons may be convicted under § 790.01(2) for carrying weapons in a closed center console; and, finally, an Assistant State Attorney provided the officers with legal advice and counsel, in advance, that probable cause existed to arrest Poulakis. As we see it, when taken in concert, these circumstances could have led a reasonable officer to believe that he had probable cause to arrest Poulakis for a violation of Fla. Stat. § 790.01(2).

In the first place, the statutory definition of a "securely encased" firearm does not explicitly reference a center console. Poulakis's claim hinges on the argument that a concealed firearm is "securely encased" and thus may be lawfully possessed in Florida when placed in the center console of a vehicle. Again, §

16

790.001(17) says that a weapon is "securely encased" when it is "in a glove compartment, whether or not locked; snapped in a holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access." Fla. Stat. § 790.001(17). Notably, the definition denotes five specific instances when a firearm is "securely encased" for the purposes of § 790.25(5). At least one of these, "a glove compartment," is strongly analogous to a center console in that it is prototypically an attached, non-removable component of the car that is used for storage. However, while the statute does include a glove compartment and certain other specific locations, the statute does not include a center console on this definitional list.

Where a statute contains a list of related items but does not expressly include the specific item at issue, we have sometimes applied the general canon of statutory interpretation known as expressio unius est exclusio alterius. See Cast Steel Prods., Inc. v. Admiral Ins. Co., 348 F.3d 1298, 1303 (11th Cir. 2003) (stating that the court will "[a]pply[] the time-honored maxim of construction expressio unius est exclusio alterius"), but see Wilhelm Pudenz, GmbH v. Littlefuse, Inc., 177 F.3d 1204, 1209 n.5 (11th Cir. 1999) ("courts rarely rely solely on this canon of statutory construction [known as expressio unius] because it is subject to so many exceptions"). The principle of expressio unius simply says that

17

when a legislature has enumerated a list or series of related items, the legislature or drafter intended to exclude similar items not specifically included in the list. See United States v. Castro, 837 F.2d 441, 442 (11th Cir. 1988) ("A general guide to statutory construction states that the mention of one thing implies the exclusion of another; expressio unius est exclusio alterius.") (internal quotation marks omitted). This principle applied today at least suggests that the legislature may have intended to exclude center consoles from the locations in which a firearm could be securely encased, and consequently that carrying a firearm in the center console of a vehicle would violate § 790.01(2).

We are reluctant to read too much into this principle of statutory construction, but the legislature's detailed definition -- notably including the glove compartment, but failing to mention the center console -- at least contributes to some ambiguity regarding whether the statutory exception extends to firearms in the center console of vehicles. When the legislature defined the § 790.25(5) "securely encased" exception to the broad § 790.01(2) prohibition only by listing specific locations, it created a degree of discreteness and circumscription in the exception. By listing the glove compartment among the locations in which a firearm may be permissibly carried (as securely encased), the legislature offered some evidence that it considered the propriety of including discrete and specific

18

attached parts of the car within the definition of securely encased. In short, the statute provided clear guidance to public officials in some (but not all) circumstances.

In the second place, it is unclear how the legislature intended to define the term "a closed box or container which requires a lid or cover to be opened for access" for the purposes of § 790.25(5), and, whether a center console falls within this definition. Section 790.001(17) includes among its enumerations that a firearm is securely encased, (and thus permissible under § 790.25(5)), if it is "in a closed box or container which requires a lid or cover to be opened for access." Fla. Stat. § 790.001(17). Although the legislature was not required to provide further definition of a box or container, in the absence of further clarification the scope of the definition of "box or container" is not altogether clear, leaving open questions about whether various parts of the vehicle -- such as a trunk or, say, a vanity pouch with a cover -- qualify as boxes or containers.

It is by no means self-evident that a center console is a "box or container which requires a lid or cover to be opened for access." Although a closed center console is akin to a closed box or container because it serves as a (typically four-sided) storage compartment, it is also fundamentally different based on portability. One commonly held view about the meaning of a "box" or "container," is not only

19

that it acts as a (typically four-sided) storage compartment, but also that it is free standing so that it is readily portable from place to place, like a cardboard box, a shoe box, a hat box, or maybe a tupperware container.  A center console, like a glove compartment, but unlike a prototypical box or container, is a fully attached part of the vehicle that cannot readily be removed from the vehicle and carried away.   The difference between this common conception of a box or container on the one hand and a center console on the other hand, as well as some uncertainty regarding the definition of box or container, also supports a reasonable belief that there was probable cause to arrest Poulakis for a violation of § 790.01(2).

A third factor contributing to the lack of clarity is the continued pattern of litigation and attendant confusion surrounding the meaning and application of § 790.25(5), and the convictions under § 790.01(2).  Since § 790.25(5) was adopted some twenty-five years ago, litigation has swirled about in the lower Florida courts concerning how to interpret and apply the "securely encased" exception for firearms "in a closed box or container which requires a lid or cover to be opened for access."  Thus, for example, Florida's intermediate appellate courts have been called upon to consider whether a firearm was "securely encased" in a "closed box or container" when it was hanging from a dashboard in a snapped closed plastic pouch with a flap, see Urquiola v. State, 590 So. 2d 497 (Fla. 3d DCA 1991);

20

whether a firearm was "securely encased" in a "closed box or container" when it was in a cardboard box wedged in between the driver's and passenger's seat, see Gemmill v. State, 657 So. 2d 900 (Fla. 4th DCA 1995); whether a sheathed knife in a closed center console is "securely encased," see Dixon v. State, 831 So. 2d 775 (Fla. 4th DCA 2002); and whether a firearm found underneath papers in a closed center console is "securely encased," see Bell v. State, 636 So. 2d 80 (Fla. 2d DCA 1994).[7]

Indeed, even when the Florida intermediate appellate courts have decided that the possession of a concealed weapon or firearm was lawful because it was "securely encased" under the § 790.25(5) exception, these cases have arisen only after an arrest, a prosecution, and a conviction for a violation of § 790.01(2). See, e.g., Dixon, 831 So. 2d at 775, Gemmill, 657 So. 2d at 901, and Bell, 636 So. 2d at 81. That these cases continue to be litigated, that officers have continued to arrest criminal defendants for a violation of § 790.01(2) where a weapon or firearm is found within a center console or other arguably similar locations, that prosecutors have continued to bring these charges, and, most important, that trial judges and

---

[7] The only time that the Florida Supreme Court has addressed the "securely encased" prong of § 790.25(5) was in 1985 in Alexander v. State, 477 So. 2d 557 (Fla. 1985), when it found that the statute was constitutional, and that a zippered man's hand bag qualified as a "zippered gun case" so that a gun inside was "securely encased" under § 790.25(5).

21

juries have convicted on these facts suggests that a reasonable officer could believe there was probable cause to arrest under similar circumstances. But, even if these circumstances standing alone or acting together do not yield the conclusion that a reasonable officer had arguable probable cause, they could lead a reasonable officer to seek legal advice from the Assistant State Attorney on precisely this point before effecting an arrest.

Here, the officers did just that, first consulting with and obtaining the approval of an Assistant State Attorney before arresting Poulakis, and this contributes substantially to the reasonableness of the officers' probable cause determination. We have not had occasion to squarely address the role that an officer's prior consultation with counsel may play in Fourth Amendment qualified immunity analysis.[8]

---

[8] Neither our decision in Doe v. Kearney, 329 F.3d 1286 (11th Cir. 2003), cited by the appellee, nor Crowe v. Lucas, 595 F.2d 985 (5th Cir. 1979), cited by the appellant, is directly on point. In Doe v. Kearney, we reviewed a due process challenge to the warrantless removal of the Doe children at the J.N.O.V. stage. The consultation with an attorney was considered, but it was considered in reviewing evidence as to whether the social worker sought to "circumvent judicial participation," or acted "reasonably" and "diligently." In Crowe, we reviewed a civil rights suit by the plaintiff alleging inter alia that city officials violated his First and Fourteenth Amendment rights. Crowe was tried and reviewed under the prior standard for qualified immunity, which contained a subjective element. The jury rendered judgment for the plaintiff, but "[t]he district judge granted defendants' motion for judgment notwithstanding the verdict, finding that the defendants could not be held liable under the civil rights statutes since the actions Crowe complained of were committed in good faith and in reliance on advice of counsel." Id. at 988. On review, we found that "[r]eliance on advice of counsel does not serve as an absolute defense to a civil rights action," however that fact was properly considered by the jury as evidence of

22

Even where an officer has consulted with an attorney prior to making an arrest, we still must look at the relevant case law and the statutory text. If the case law or statutory text is crystal clear in prohibiting the officer's arrest of the civil rights plaintiff, the officer's consultation with an attorney will not aid him in our qualified immunity analysis, because an attorney's advice cannot transform the officer's patently unlawful activity into objectively reasonable conduct. Thus, for example, if the firearm in this case had been found in the glove compartment of the car, rather than in the center console, in the face of this statute, advice from an Assistant State Attorney that an officer had probable cause would be plainly insufficient to insulate the officer on the theory of qualified immunity. Conversely, if there was no case on point and the statutory text was unclear in its application, the officer's consultation with an attorney would be unnecessary to our analysis because the officer would be entitled to qualified immunity, regardless of whether he had consulted with an attorney. But, where the application of the law to the facts falls on the hazy border between clear and ambiguous, the officer's consultation with an attorney prior to making the arrest may become relevant to the calculus.

---

good faith. Id. at 992. Since then, the Supreme Court has eliminated the subjective component of the qualified immunity test. See Harlow, 457 U.S. at 818-19.

23

The United States Courts of Appeals for the First Circuit and the Seventh Circuit have addressed the significance of a law enforcement officer's pre-arrest consultation with an attorney in these borderline circumstances in Cox v. Hainey, 391 F.3d 25 (1st Cir. 2004) and Kijonka v. Seitzinger, 363 F.3d 645 (7th Cir. 2004), respectively. In Cox, the First Circuit reviewed whether a state trooper was entitled to qualified immunity on a wrongful arrest claim when he arrested the plaintiff following a lawful search of his apartment that uncovered drug paraphernalia and Roxicodone tablets, and following consultation with an Assistant District Attorney who agreed that this evidence and the trooper's prior knowledge supported probable cause to arrest. The court recognized the importance of the officer's pre-arrest consultation with the attorney:

> We agree with the appellant's premise that a wave of the prosecutor's wand cannot magically transform an unreasonable probable cause determination into a reasonable one . . . . [However,] the fact of the consultation and the purport of the advice obtained should be factored into the totality of the circumstances and considered in determining the officer's entitlement to qualified immunity.

391 F.3d at 34. The First Circuit concluded that "an objectively reasonable officer would have taken the prosecutor's opinion into account in deciding whether to make the arrest," and affirmed a finding of qualified immunity. Id. at 36.

In Kijonka, the Seventh Circuit reviewed whether an officer was entitled to qualified immunity on a wrongful arrest claim when he arrested the plaintiff after he read a complaint that the plaintiff had threatened to "get" another person, and, after he consulted with a prosecutor who informed him that the complaint supported probable cause to arrest. The Seventh Circuit placed substantial weight on the officer's pre-arrest consultation with counsel: "[c]onsulting a prosecutor may not give an officer absolute immunity from being sued for false arrest, but it goes far to establish qualified immunity." Kijonka, 363 F.3d at 648 (internal citations omitted). The court concluded that the officer was entitled to qualified immunity.

We agree with the approach taken by our sister circuits. As a practical matter, it is altogether consistent with a totality of the circumstances analysis to consider pre-arrest consultation and advice of a district attorney as being one circumstance contributing to the objective reasonableness of an officer's conduct. Indeed, it may be an important factor for a court to consider when the outcome in the qualified immunity case would otherwise be unclear. It stands to reason that an officer who, prior to an arrest, presents the facts to an assistant state attorney in the course of his official duties, and receives the prosecutor's advice that there is probable cause to arrest, would have a stronger reason to believe that there was

25

probable cause.

We add that when an officer is unsure of how to proceed, his ability to seek guidance from a prosecutor may protect an individual from wrongful arrest. In fact, considering the consultation with and adherence to the advice of a public attorney as a factor in the qualified immunity analysis where the arrest may fall on the borderline of arguable probable cause could encourage police officers to obtain the advice of an attorney in the first place.

In this case, we think the officers acted in an objectively reasonable manner. Faced with a statute that was not abundantly clear in its application, and unsure of how to proceed, the officers asked their superior, who in turn called the on-duty Assistant State Attorney for advice. The undisputed facts indicate that the officers fairly explained the circumstances and material facts, the Assistant State Attorney unambiguously expressed his opinion that the officers would have probable cause to arrest Poulakis, and the officers had no reason to believe the prosecutor acted wrongfully. Thus, the opinion of the Assistant State Attorney should be considered as part of the mix in examining the question of qualified immunity, and it was of the kind that an objectively reasonable officer could consider reliable.

When each of these circumstances is taken together, a reasonable officer could have believed that he had probable cause to arrest Poulakis for a violation of

Fla. Stat. § 790.01(2). Quite simply, we believe that Officers Rogers and Stender had arguable probable cause to arrest Poulakis for a violation of Fla. Stat. § 790.01(2), and, therefore, that they are entitled to qualified immunity on the wrongful arrest claim.

**AFFIRMED**.

QUIST, District Judge, dissenting:

I respectfully dissent from the Court's opinion. I agree with the district court that Officer Rogers and Sgt. Stender lacked arguable probable cause to arrest Poulakis for violating Florida's concealed weapons law. I would reverse, however, because in my judgment the district court erred in concluding that advice of counsel could transform a patently unreasonable arrest into a reasonable one.

My principal disagreement with the majority's analysis is that it treats arguable probable cause as part of the clearly established prong of the qualified immunity analysis, when both Eleventh Circuit precedent and reason show that whether a federal constitutional right was clearly established is distinct from whether a police officer was objectively reasonable in making an arrest. Because, in my judgment, arguable probable cause is properly considered under the first step of the qualified immunity analysis, or at least separately from whether the law was clearly established, we may consider state intermediate appellate decisions construing the pertinent state statute. I also believe that there is no ambiguity in the statutory definition of "securely encased."

## I.

In concluding that Defendants lacked arguable probable cause, the district court relied upon several Florida appellate decisions that considered whether a

28

firearm or other weapon contained in a closed center console is "securely encased," and thus not a "concealed weapon" within the meaning of Fla. Stat. § 790.25(5). Those decisions held unequivocally that a firearm within a center console is "securely encased." No relevant Florida decision even suggests otherwise. The majority sidesteps these decisions, however, by invoking this circuit's rule that "decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state . . . can clearly establish the law," *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).[1]

We may consider intermediate state court decisions in a qualified immunity analysis if arguable probable cause – this Court's test for determining whether an arrest without probable cause was objectively reasonable – is part of the first, rather than the second, step of the qualified immunity analysis. If, as the majority writes, arguable probable cause is merely a substitute for the "clearly established" prong in wrongful arrest cases, then the rule expressed in *McClish*, *supra*, and

---

[1]Some recent decisions from this Court have adopted a more expansive list of authority that may clearly establish the law. *See Danley v. Allen*, 540 F.3d 1298, 1313 (11th Cir. 2008) (stating that among other sources, "a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed" may serve to notify a public official that his actions will violate a constitutional right); *Goebert v. Lee County*, 510 F.3d 1312, 1330 (11th Cir. 2007) (recognizing "factually similar cases already decided by state and federal courts in the relevant jurisdiction" as "sources of law that would put a government official on notice of statutory or constitutional rights") (citing *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002)).

many other cases from this Court would control. Some Eleventh Circuit cases do suggest that arguable probable cause is part of the clearly established prong. *See, e.g., Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) ("Absent evidence that a constitutional violation occurred, we need not consider whether the alleged violation was clearly established; that is, we need not consider whether Officer Davis lacked even arguable probable cause."). Other cases refer to probable cause and arguable probable cause as merely different standards in the qualified immunity analysis. *Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir. 2002) ("An officer sued for having made an arrest without probable cause is entitled to qualified immunity if there was arguable probable cause for the arrest, which is a more lenient standard than actual probable cause."); *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause,' i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.").

I believe that *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007), exemplifies the proper analysis. The *Skop* court regarded arguable probable cause as part of the constitutional violation prong of the analysis. The court wrote: "Whether an arresting officer possesses probable cause or arguable probable cause

30

naturally depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1137-38 (citation omitted). To determine whether there was arguable probable cause, the court considered the elements of the Georgia statute prohibiting obstructing a police officer as well as decisions from the Georgia Court of Appeals construing the statute. *Id.* at 1138. The court concluded that the defendant officer lacked both probable cause and *arguable probable cause* to arrest the plaintiff. *Id.* at 1140, 1143. At the second step, whether the law was clearly established, the court wrote that the right at issue was whether "an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures." *Id.* The *Skop* court clearly regarded arguable probable cause as part of the constitutional violation inquiry rather than the clearly established inquiry. *Id.* at 1144.

*Skop* is legally indistinguishable, and the same analysis applies to this case. *Skop* reveals that the majority's observation "that no decision from the United States Supreme Court, this Court, or the Florida Supreme Court has clearly established that a firearm found in a center console of a vehicle is 'securely encased' for the purposes of Florida's penal code, Fla. Stat. § 790.25(5)," is irrelevant. *Skop* framed the issue as whether an arrest made without arguable probable cause violates the Fourth Amendment. That right is clearly established.

31

The *Skop* court did not consider whether Skop's conduct violated the Georgia obstructing statute as part of the clearly established prong.

*Davis v. Williams*, 451 F.3d 759 (11th Cir. 2006), like *Skop*, considered intermediate state appellate court decisions in its arguable probable cause analysis. *Davis* involved Florida statutes prohibiting obstruction of justice and disorderly conduct. Citing three appellate decisions, the court observed that "Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under § 843.02." *Id.* at 765. In fact, the *Davis* court cited *only* Florida appellate decisions in its arguable probable cause analysis. The majority acknowledges *Davis*, but argues that the *Davis* court was really looking at Florida appellate decisions to determine whether there was probable cause to arrest, not to determine whether the law was "clearly established." This is only partially correct. It is clear that *Davis* regarded intermediate appellate decisions as relevant to its determination of whether there was *arguable probable cause*. *See id.* at 764. *Davis* and *Skop* both considered the right at issue – to be free from an arrest without arguable probable cause – as clearly established without further considering the state statute in the clearly established analysis.

32

*Skop* and *Davis* are consistent with other decisions in which this Court considered intermediate state appellate court decisions as authoritative on state law issues critical to the qualified immunity analysis. *See Case*, 555 F.3d at 1328 (citing *Dial v. State*, 798 So. 2d 880, 883 (Fla. Dist. Ct. App. 2001), for the proposition that Florida law requires independent corroboration of information supplied by an informant who has an interest in the investigation to support probable cause); *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (noting that "[t]he fact-intensive nature of the constitutional inquiry accounts for the varying views in the Florida appellate courts of what constitutes legally proscribed disorderly conduct" and concluding that the defendant officers had arguable probable cause).[2]

When a state law is at issue within the larger context of arguable probable cause in a Fourth Amendment claim, it makes good sense for a federal court to consider what *all* courts of that state have to say about that law, just as the police officers, prosecutors, and judges of that state must do. After all, arguable probable cause considers "whether 'reasonable officers *in the same circumstances and*

_____

[2]Several unpublished decisions from this Court also followed this approach. *See Killmon v. City of Miami*, 199 F. App'x 796, 799-800 (11th Cir. 2006) (citing Florida appellate decisions construing Florida's "fellow-officer" rule, Fla. Stat. Ann. § 901.18); *Migut v. Flynn*, 131 F. App'x 262 (11th Cir. 2005) (citing Florida appellate decisions in analysis of whether the defendant had arguable probable cause to arrest the plaintiff for intercepting an oral communication in violation of Fla. Stat. § 934.03(1)(a)).

33

*possessing the same knowledge as Defendants* could have believed that probable cause existed to arrest Plaintiff,'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)) (italics added), and "since a reasonably competent public official should know the law governing his conduct," *Harlow v. Fitzgerald*, 457 U.S. 800, 819, 102 S. Ct. 2727, 2738 (1982), our focus should be upon what reasonable police officers of the state would have known about that state's laws, including the judicial interpretations by which they are bound. Because I believe that our precedent reveals that arguable probable cause is part of the first, rather than the second, prong of the qualified immunity analysis, I see no principled basis for ignoring pertinent Florida appellate decisions.

The cases the majority cites all applied the rule in determining the scope of the federal constitutional right at issue, *see, e.g.*, *McClish*, 483 F.3d at 127 (applying the rule in the context of whether the federal constitutional right at issue was clearly established); *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997) (discussing whether *United States v. Lanier*, 520 U.S. 259, 117 S. Ct. 1219 (1997), addressed the extent to which previous decisions of lower courts "may be considered in deciding whether a constitutional right has clearly been established"); none involved interpretation of a state statute, *qua*

statute.  In fact, *Courson v. McMillian*, 939 F.2d 1479 (11th Cir. 1991), which appears to be the first decision by this Court to have recognized decisions of the highest court of the pertinent state as a source of authority that can clearly establish the law in this circuit, refers to decisions "address[ing] a *federal constitutional issue* that has not been addressed by the United States Supreme Court or the Eleventh Circuit."  *Id.* at 1498 n.32 (italics added).  None of the Florida appellate cases the majority eschews addressed a federal constitutional issue.  Accepting the majority's reasoning, then, even a decision from the Florida Supreme Court itself – the final expositor of Florida law – holding that a firearm found in a center console of a vehicle is "securely encased" under Fla. Stat. § 790.25(5) could not "clearly establish" the law pursuant to *Courson* because it would not involve a federal constitutional issue.

At the time of Poulakis' arrest, Florida cases decided years and even decades earlier held that a weapon in a center console of a vehicle is "securely encased" and thus not "concealed" in violation of Fla. Stat. § 790.01(1), (3).  For example, in *Dixon v. State*, 831 So. 2d 775 (Fla. Dist. Ct. App. 2002), the court reversed the defendant's conviction for carrying a switch-blade knife in the center console of his vehicle.  The court found the case "on all fours" with *Bell v. State*, 636 So. 2d 80 (Fla. Dist. Ct. App. 1994), which held that a gun found in a closed center

35

console of a vehicle was securely encased. *Id.* at 776. The *Bell* court explained

that "Bell's revolver was securely encased by the very definition of that term as it

was in a closed console that requires the opening of a lid for access." *Bell*, 636 So.

2d at 81. Similarly, *State v. Gomez*, 508 So. 2d 784 (Fla. Dist. Ct. App. 1987),

held that a sheathed knife within a closed center console was securely encased and

not readily accessible for immediate use.

In light of *Dixon*, *Bell*, and *Gomez*, no reasonable police officer in

Defendants' position could have believed that probable cause existed. These

decisions addressed factual situations identical to the one in this case. The

majority speaks of a pattern of confusion over the meaning and application of §

790.25(5) arising from litigation that has "swirled about in the lower Florida

courts." The simple fact is that since Florida amended its gun law in 1982 to

include the private conveyance exception and the definition of "securely encased"

set forth in § 790.25(5), *every* single court confronted with the issue has held that a

weapon in a center console is securely encased. Whether a firearm hanging from a

dashboard in a snapped closed plastic pouch with a flap is "securely encased," or

whether a trunk or a vanity pouch with a cover qualify as boxes or containers under

the statute, are interesting questions, but irrelevant to the issue before us of whether

36

a center console is a box or a container which requires a lid or cover to be opened for access.

## II.

Even accepting the majority's argument that arguable probable cause is determined as part of the clearly established inquiry, I would reach the same conclusion based solely upon the plain language of the statute; no reasonable interpretation of the "securely encased" exception supports Defendants' arrest of Poulakis. "[C]onduct may be clearly established as illegal through explicit statutory or constitutional statements." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1208-09 (11th Cir. 2007) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)). That is, a closed center console of a vehicle is plainly a "container which requires a lid or cover to be opened for access." According to the Random House Dictionary, a container is "anything that contains or can contain something, as a carton, box, crate, or can." *Random House Dictionary of the English Language* 438 (2d ed. 1987). Similarly, the online Oxford English Dictionary defines a container as "that which contains, esp. a receptacle designed to contain or store certain articles." *Oxford English Dictionary* (2d ed. 1989). A center console, which is designed to contain something and has a lid, is undoubtedly a container

within the meaning of the statute. There is no ambiguity.[3] Likewise, a center console is a box, which is defined as "a container, case, or receptacle, usually rectangular, of wood, metal, cardboard, etc., and often with a lid or removable cover." *Random House Dictionary of the English Language* 249 (2d ed. 1987). In short, the statute is sufficiently clear to notify Defendants that they lacked probable cause to arrest Poulakis for a carrying a concealed firearm.

The majority cites three grounds for concluding that the text of the statute did not provide clear guidance to Defendants in this case. None of those grounds withstands scrutiny.

First, the majority notes that the statutory definition of "securely encased" does not explicitly refer to a center console, while it does refer to a "glove compartment." It reasons that a center console is "strongly analogous" to a glove compartment because both are generally fixed components of a vehicle used for storage, then purports to apply the principle of statutory construction that the mention of one thing implies the exclusion or another, or *expressio unius est exclusio alterius*, to find ambiguity based upon this omission. But the majority fails to heed the rule of "great caution" in applying this principle. *United States v.*

---

[3]I cannot imagine why the Florida Supreme Court would even bother to construe the statute in light of the consistent opinions of Florida intermediate courts plus the unambiguous statutory language.

*Castro*, 827 F.2d 441, 443 n.2 (11th Cir. 1998) (quoting 73 Am. Jur. 2d *Statutes* §

212, at 405-06).

The primary flaw in this analysis is the conclusion that the statute describes

specific locations. It does not. Rather, it describes things or items. While a glove

compartment is a location as well as a thing, because it is attached and

nonmovable, none of the other items described is attached to a vehicle; are all very

movable, and thus, cannot reasonably be considered locations. In fact, nothing in

the statute suggests that the Florida legislature was concerned with locations within

an automobile. To the contrary, the concern was accessibility. The private

conveyance exception applies only "if the firearm or other weapon is securely

encased or is not otherwise readily accessible for immediate use." Fla. Stat. §

790.25(5). "Securely encased" means "in a glove compartment, whether or not

locked, snapped in a holster; in a gun case, whether or not locked; in a zippered

gun case; or in a closed box or container which requires a lid or cover to be opened

for access." Fla. Stat. § 790.001(17). The point of each of these items is to

preclude immediate access by requiring an intermediate step – opening a lid or

cover; unsnapping a holster; or unzipping a gun case. Because a holster or a box or

container with a lid can be easily placed within the driver's reach on the floor, on

the seat between the driver's legs, or on the seat next to the driver, location has no bearing on whether a weapon is securely encased.

Since "securely encased" refers to things and not locations, the failure to mention a center console creates no ambiguity at all. The definition lists four specific items – a glove compartment, a holster, a gun case, and a zippered gun case, each of which is either a box, a container, or both and requires some act to obtain access. It also includes, however, two broadly-descriptive items – a box or container with a lid or cover that must be opened for access – as a catch-all that would cover a host of items not mentioned in the definition. As set forth above, a center console is both a box and a container with a lid and is thus within the definition of "securely encased," even though it is not specifically mentioned.

Second, the majority writes that it is unclear how the legislature intended to define the term "a closed box or container which requires a lid or cover to be opened for access," but it fails to explain why this is so. The majority simply ignores the well-known rule of statutory construction that "[w]here a statute does not define a term, we must give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise." *Konikov v. Orange County*, 410 F.3d 1317, 1329 (11th Cir. 2005). Nothing in the statute suggests that the Florida legislature intended anything other than the

common and ordinary meanings of the words "box" and "container," both of which describe a center console. Instead of identifying and applying the proper rule, the majority imports its own limitation of "portability" into the definition, even though we are prohibited from doing so. *Friends of Everglades v. S. Fla. Water Mgm't Dist.*, __ F.3d __, 2009 WL 1545551, at * (11th Cir. June 4, 2009) ("But we are not allowed to add or subtract words from a statute; we cannot rewrite it."). It is irrelevant that some boxes or containers are portable. Other boxes are fixed and not portable, such as mailboxes, penalty boxes in hockey, or electrical boxes, but they are still boxes. Moreover, the statute itself refutes the "portability" argument, because it includes both a box and/or container that is portable, i.e., a gun case, and a box and/or container that is not portable, i.e., a glove compartment.

Finally, the majority says that the continued pattern of litigation contributes to the lack clarity in the term box or container. I submit that the language, rather than frequency of litigation, is the usual measure of a statute's clarity. It is thus irrelevant whether cases continue to litigate the "securely encased" exception. Given the breadth of the terms "box" and "container," the kinds of items that are arguably a box or a container are virtually limitless. But as already mentioned, every court that has considered the issue has concluded that a center console is a

"box" or a "container" within the statute. Thus, at least where a center console is involved, there is no confusion about whether it is "securely encased."

**III.**

Having concluded that the statute lacks the clarity required to put Defendants on notice that they lacked arguable probable cause to arrest Poulakis, the majority finds that Defendants' reliance on the advice of an unknown Assistant State Attorney is an additional consideration establishing arguable probable cause in this case. I agree with the general proposition that where qualified immunity presents a close question, a police officer's reliance on the advice of counsel may be an appropriate factor in determining whether the officer's conduct was objectively reasonable. My disagreement, as explained above, is that this is not a situation in which the facts fell "on the hazy border between clear and ambiguous," given several prior Florida appellate opinions addressing the exact circumstances at issue in this case and a statute that is clear in its application to these circumstances. Thus, the district court's error was concluding that reliance on advice of counsel could render Defendants' conduct reasonable after it had already concluded that Defendants lacked arguable probable cause, or an objectively reasonable basis, to arrest Poulakis. In other words, it allowed "a waive of the prosecutor's wand [to]

42

magically transform an unreasonable probable cause determination into a reasonable one." *Cox v. Hainey*, 391 F.3d 25 (1st Cir. 2004).

My larger concern is that this Court's decision sends a signal to police officers that they are free to ignore the law of the intermediate state appellate courts by which they are otherwise bound, and an unambiguous statute, without concern for violating an individual's federal constitutional rights. Therefore, I would reverse on qualified immunity and remand for consideration of the other defenses Defendants raised in their summary judgment motion.